MEREDITH N. LANDY (S.B. #136489)
DALE M. EDMONDSON (S.B. #189793)
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, CA 94025
Telephone: (650) 473-2600
Facsimile: (650) 473-2601

DANIEL A. POLLACK *(Pro Hac Vice)*
EDWARD McDERMOTT *(Pro Hac Vice)*
ANTHONY ZACCARIA *(Pro Hac Vice)*
POLLACK & KAMINSKY
114 West 47th Street
New York, NY 10036
Telephone: (212) 575-4700
Facsimile: (212) 5757-6560

Attorneys for defendants
FRANKLIN RESOURCES, INC.,
FRANKLIN ADVISERS, INC., FRANKLIN
TEMPLETON DISTRIBUTORS, INC.,
TEMPLETON GLOBAL ADVISORS, LTD.
FRANKLIN ADVISORY SERVICES, LLC.,
FRANKLIN MUTUAL ADVISERS, LLC, and
FRANKLIN TEMPLETON SERVICES, LTD.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN STRIGLIABOTTI, et al., for the use and benefit of THE TEMPLETON GROWTH FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>Defendants. | Case No. C-04-0883SI<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................. 1

II.  ARGUMENT ........................................................................................................ 2

    A.   Counts I, II, and III Should Be Dismissed For Failure To State A Legally Cognizable Claim Under Section 36(b) of the Investment Company Act .............. 2

    B.   Count IV Should Be Dismissed Because No Private Right Of Action Exists Under Section 12(b) And Because Plaintiffs Have Failed To Comply With The Requirements For Bringing Derivative Claims ................................................ 4

        1.   There is no private right of action under Section 12(b) ............................. 4

        2.   Section 36(b) is plaintiffs' exclusive remedy for excessive fee claims ................................................................................................ 7

        3.   Count IV does not satisfy the requirements of Rule 23.1 ........................... 7

    C.   In the Absence of Viable Federal Claims, the Court Should Not Exercise Supplemental Jurisdiction Over Plaintiffs' State Claims, All of Which Otherwise Should Be Dismissed on Multiple Grounds ......................................... 9

        1.   All state claims should be dismissed for failure to satisfy the standard applicable to derivative claims .................................................. 10

        2.   Count V does not state a legally cognizable claim for breach of fiduciary duty ..................................................................................... 10

        3.   Count VI does not state a legally cognizable claim for conspiracy .......... 11

        4.   Count VII does not state a legally cognizable claim for aiding/abetting ........................................................................................ 11

        5.   Count VIII does not state a legally cognizable claim for "action in concert" .................................................................................................... 12

        6.   Count IX does not state a legally cognizable claim under Section 17200 ....................................................................................................... 12

        7.   Count X does not state a legally cognizable claim for false advertising ............................................................................................... 14

        8.   Count XI does not state a legally cognizable claim for unjust enrichment .............................................................................................. 14

III. CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

Page

## CASES

*Alexander v. Sandoval*
    532 U.S. 275 (2001) .................................................................................................... 5

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*
    7 Cal. 4th 503 (1994) ................................................................................................. 11

*Aronson v. Lewis*
    473 A.2d 805 (Del. 1984) ............................................................................................ 9

*Atari Corp. v. 3DO Co.*
    No. C 94-20298 (EAI), 1994 WL 723601 (N.D. Cal. May 16, 1994) ...................... 14

*Bates v. United States*
    522 U.S. 23 (1997) ...................................................................................................... 6

*Bowen v. Ziasun Techs., Inc.*
    116 Cal. App. 4th 777 (2004) .............................................................................. 12, 13

*Brehm v. Eisner*
    746 A.2d 244 (Del. 2000) ......................................................................................... 8, 9

*Bryant v. Adventist Health Sys./West*
    289 F.3d 1162 (9th Cir. 2002) .................................................................................... 9

*Burks v. Lasker*
    441 U.S. 471 (1979) .................................................................................................... 6

*Cruz v. U.S.A.*
    219 F. Supp. 2d 1027 (N.D. Cal. 2002) ................................................................... 10

*Daily Income Fund, Inc. v. Fox*
    464 U.S. 523 (1984) .................................................................................................... 7

*Gonzaga Univ. v. Doe*
    536 U.S. 273 (2002) ............................................................................................ 4, 5, 6

*Gonzalez Turul v. Rogatol Distribs., Inc.*
    951 F.2d 1 (1st Cir. 1991) .......................................................................................... 8

*Green v. Fund Asset Mgmt. LP*
    286 F.3d 682 (3d Cir. 2002), *cert. denied*, 537 U.S. 884 (2002) ............................ 3, 7

*Halligan v. Standard & Poor's/Intercapital, Inc.*
    434 F. Supp. 1082 (E.D.N.Y. 1977) ........................................................................... 3

*Harhen v. Brown*
    730 N.E.2d 859 (Ma. 2000) ........................................................................................ 8

*In re iAsia Works, Inc. Sec. Litig.*
    Nos. C-01-3224 SI, C-01-3224, C-01-3225, C-01-3226, C-01-3227,
    C-01-4828, 2002 WL 1034041 (N.D. Cal. May 15, 2002) ....................................... 11

*In re Merrill Lynch & Co., Inc. Research Sec. Litig.*
    272 F. Supp. 2d 243 (S.D.N.Y. 2003) ........................................................................ 5

*In re Stac Elecs. Sec. Litig.*
    89 F.3d 1399 (9th Cir. 1996) .................................................................................... 13

# TABLE OF AUTHORITIES
## (continued)

Page

*In re Stratus Computer, Inc. Sec. Litig.*
   No. 89-2075-Z, 1992 WL 73555 (D. Mass. Mar. 27, 1992) ............................................. 7

*Jacobs v. Philip Morris Inc.*
   No. CV03-5087 ABC (AJWX), 2003 WL 23342334
   (C.D. Cal. Sept. 4, 2003) ............................................................................................... 11

*Kamen v. Kemper Fin. Servs., Inc.*
   500 U.S. 90 (1991) .......................................................................................................... 8

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*
   199 F. Supp. 2d 993 (C.D. Cal. 2002) ......................................................................... 13

*Krantz v. Prudential Inv. Fund Mgmt. LLC*
   305 F.3d 140 (3d Cir. 2002), *cert. denied*, 537 U.S. 1113 (2003) ................................ 2

*Krinsk v. Fund Asset Mgmt.*
   875 F.2d 404 (2d Cir.), *cert. denied*, 493 U.S. 919 (1989) .......................................... 7

*Lappin v. Laidlaw Transit Inc.*
   179 F. Supp. 2d 1111 (N.D. Cal. 2001) ......................................................................... 9

*McLachlan v. Simon*
   31 F. Supp. 2d 731 (N.D. Cal. 1998) ............................................................................. 3

*meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners L.P.*
   260 F. Supp. 2d 616 (S.D.N.Y. 2003) ........................................................................... 5

*Migdal v. Rowe Price-Fleming Int'l, Inc.*
   248 F.3d 321 (4th Cir. 2001) .................................................................................. 2, 3, 4

*Olmstead v. Pruco Life Ins. Co.*
   283 F.3d 429 (2d Cir. 2002) ........................................................................................ 4, 5

*Patenaude v. Equitable Life Assurance Soc. of U.S.*
   290 F.3d 1020 (9th Cir. 2002) ..................................................................................... 13

*Reyn's Pasta Bella, LLC v. Visa U.S.A.*
   259 F. Supp. 2d 992 (N.D. Cal. 2003) ........................................................................... 5

*Scattered Corp. v. Chicago Stock Exch., Inc.*
   98 F.3d 1004 (7th Cir. 1996) .......................................................................................... 4

*Spiegel v. Buntrock*
   571 A.2d 767 (Del. 1990) ............................................................................................... 8

*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*
   444 U.S. 11 (1979) ...................................................................................................... 6, 7

*Vess v. Ciba-Geigy Corp.*
   317 F.3d 1097 (9th Cir. 2003) ................................................................................ 11, 12

*Werbowsky v. Collomb*
   766 A.2d 123 (Md. 2001) ............................................................................................... 8

# TABLE OF AUTHORITIES
### (continued)

Page

## STATUTES

15 U.S.C.
§ 78bb(f) .................................................................................................................. 13
§ 80a-12(b) ................................................................................................................ 4
§ 80a-35(b) ....................................................................................................... 2, 3, 4, 6

Fed. R. Civ. P
§ 9(b) .................................................................................................... 1, 11, 12, 13
§ 23.1 ............................................................................................................. 1, 7, 8

Investment Company Act
§ 12(b) ............................................................................................................. passim
§ 26(f) ...................................................................................................................... 4
§ 34(b) ...................................................................................................................... 5
§ 36(b) ............................................................................................................. passim

Restatement (First) of Restitution § 1 (1937) ........................................................ 14

Restatement (Second) of Torts § 876(b) (1977) ...................................................... 12

Business & Professions Code
§ 17200 ............................................................................................................. 12, 13
§ 17500 .................................................................................................................. 13

Securities Litigation Uniform Standards Act ("SLUSA") ...................................... 13

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on a date to be set by the Court at or after the hearing on October 1, 2004 at 9:00 a.m.,[1] defendants Franklin Resources, Inc., Templeton Global Advisors, Ltd., Franklin Advisory Services, LLC, Franklin Advisers, Inc., Franklin/Templeton Distributors, Inc., Franklin Mutual Advisers, LLC, and Franklin Templeton Services, Ltd., will and hereby do move under Rules 9(b), 12 and 23.1 of the Federal Rules of Civil Procedure for an order dismissing the First Amended Complaint ("Complaint") on the grounds that plaintiffs fail to state a claim on which relief can be granted, fail to comply with the rules applicable to derivative standards, and fail to satisfy the relevant pleading standards. Issues to be decided include, *inter alia*, whether the Complaint states valid causes of action, and whether the plaintiffs have standing to pursue the claims asserted.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs' conclusory allegations that the advisory and distribution fees paid by various mutual funds were "excessive" in an unspecified amount fail to state a claim under Section 36(b) of the Investment Company Act of 1940 ("ICA"). Plaintiffs fail to allege any specific facts about the services actually provided in exchange for the fees, much less facts establishing that the fees were so disproportionately large that they bore no reasonable relationship to the services rendered. Plaintiffs' allegations also fail to state a claim under Section 12(b) of the ICA because there is no private right of action, express or implied, under Section 12(b), and plaintiffs' failure to make demand on the Funds' directors in contravention of the Federal Rules of Civil Procedure is not excused. *See* Fed. R. Civ. P. 23.1. Because plaintiffs' federal claims under the ICA cannot stand, the Court should decline to exercise supplemental jurisdiction over plaintiffs' common law claims. If the Court chooses to exercise supplemental jurisdiction over the state law claims, those claims should also be dismissed on other grounds as set forth below.

---

[1] At the Case Management Conference on August 6, 2004, the Court ordered, as followed by civil minutes, that the defendants may file their motion to dismiss on August 27, 2004, but the motion will not be noticed for hearing until a later time.

## II. ARGUMENT

### A. Counts I, II, and III Should Be Dismissed For Failure To State A Legally Cognizable Claim Under Section 36(b) of the Investment Company Act.

The core of plaintiffs' claims is based on Section 36(b) of the Investment Company Act of 1940, 15 U.S.C. § 80a-35(b). At the pleading stage, a Section 36(b) claim must allege facts that would show that the fees charged are disproportionate to the services rendered, and are in fact so disproportionately large that they bear no reasonable relationship to the services rendered. *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir. 2001) (citation and quotations omitted); *Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140 (3d Cir. 2002), *cert. denied*, 537 U.S. 1113 (2003). Plaintiffs failed to plead such facts.

In *Migdal*, the Fourth Circuit addressed the allegations required to state a claim under Section 36(b):

> To survive a motion to dismiss, a complaint may not simply allege in a conclusory manner that advisory fees are 'excessive.' Instead, a plaintiff must allege <u>facts</u> that, if true, would support a claim that the fees at issue are excessive. As the district court correctly recognized, in order to determine whether a fee is excessive for purposes of Section 36(b), a court must examine the relationship between the fees charged and the services rendered by the investment adviser . . . Plaintiffs have failed to allege any <u>facts</u> pertinent to this relationship between fees and services. Specifically, while plaintiffs have challenged the fees that defendants charged, they have failed to allege <u>sufficient facts about the services</u> that defendants offered in return for those fees. For example, plaintiffs' comparison between the two underlying funds and three other mutual funds is not particularly meaningful precisely because it does not address the particular services offered by the defendants in this case. *Id.* at 327 (emphasis added).

Here, plaintiffs present no facts which, if proven, would show a disproportionality between fees charged and services rendered. Plaintiffs simply name a number of Funds on whose behalf they claim to be proceeding (*see* Complaint ¶ 1), and list a series of defendants (*Id.* ¶¶ 36-38) that they claim received "excessive or inappropriate compensation." *Id.* ¶ 80. Based on these claims, plaintiffs indiscriminately accuse all defendants of violating Section 36(b). *Id.* ¶¶ 78-98. These claims are purportedly supported by allegations that are either so vague as to be meaningless, or that are completely irrelevant. For instance, plaintiffs allege that "[d]efendants

buy and sell, at their discretion, stocks, bonds, and other securities for the Funds" (*Id.* ¶ 46), followed by pages of allegations that purport to detail improper practices and charges. *See, e.g., Id.* ¶¶ 47-71. None of these allegations, however, provides any insight whatsoever as to the specific services rendered and the relationship between those services and the fees charged.[2] In essence, then, plaintiffs ask the Court to *assume* that <u>whatever</u> services any defendant rendered to any Fund, of <u>whatever</u> nature or quality, producing <u>whatever</u> results, under <u>whatever</u> circumstances, must have been worth less than the Fund paid – <u>whatever</u> that amount may have been. And not only less, but so much less as to constitute an essentially unconscionable deal – one which could never have been the product of arms' length negotiations. As a matter of law, a pleading unsupported by any factual allegations about the relationship between fees and services is insufficient to sustain claims under Section 36(b). *See, e.g., Migdal*, 248 F.3d at 327 (dismissing claims lacking "facts pertinent to th[e] relationship between fees and services").

Even if plaintiffs had made out Section 36(b) claims against the advisers and the distributor, which they did not, their claims against Franklin Resources and Franklin Templeton Services could not stand. By its terms, Section 36(b) is a very narrow statute, which allows suit only against "the recipient of such compensation or payments." 15 U.S.C. § 80a-35(b). The statute thus permits no secondary liability, and no liability for anyone other than recipients of the challenged fees. *See, e.g., Green v. Fund Asset Mgmt. LP*, 286 F.3d 682, 685 (3d Cir. 2002) (allowing suit only against "the recipient of the fees"), *cert. denied*, 537 U.S. 884 (2002); *Halligan v. Standard & Poor's/Intercapital, Inc.*, 434 F. Supp. 1082, 1085 (E.D.N.Y. 1977) ("plaintiff is incorrect in arguing that liability under section 36(b) extends to all who receive compensation or payments for any activities involving the investment advisory contract. . . . [O]nly those who receive money . . . for investment advisory services may be held liable for breach of their fiduciary duty with respect to such payments."); *McLachlan v. Simon*, 31 F. Supp. 2d 731, 739 n.7 (N.D. Cal. 1998) (rejecting 36(b) claim for aider/abettor liability). As a result, no

---

[2] Indeed, plaintiffs' only reference to fees charged by any defendant involves a general allusion to fees paid by the Templeton Growth Fund, and how those fees would purportedly change under a different structure. *See* Complaint ¶ 65(b). Even this discussion does not specify which defendants, if any, received what portion of the alleged charges.

defendant can be liable unless it received fees. While plaintiffs at least attempt to identify which adviser manages each Fund (*see* Complaint ¶ 1), they do not even purport to specify which of the remaining defendants received fees for services they performed for which Funds – much less how any fees they received, whatever they may have been, were excessive. In sum, the Complaint does not contain facts which, if proven, could support claims that the defendants received fees that were so excessive relative to the services rendered that they could not have been the product of arms' length negotiations. *Migdal*, 248 F.3d at 327.

**B. Count IV Should Be Dismissed Because No Private Right Of Action Exists Under Section 12(b) And Because Plaintiffs Have Failed To Comply With The Requirements For Bringing Derivative Claims.**

In addition to their claims under Section 36(b), plaintiffs accuse unidentified defendants of violating Section 12(b) pertaining to distribution plans. *See* Complaint, Count IV. This claim is founded on a cause of action that does not exist, and that plaintiffs would not have any right to pursue in any event. Count IV therefore merits dismissal on multiple grounds.

**1. There is no private right of action under Section 12(b).**

In marked contrast to Section 36(b), Section 12(b) does not create any express cause of action for private parties. 15 U.S.C. § 80a-12(b); *compare* 15 U.S.C. § 80(a)-35(b) (expressly authorizing shareholder suits). Nor can plaintiffs establish an implied right of action under that section. To do so, plaintiffs must show that Congress specifically intended to authorize private enforcement of the section at issue. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-86 (2002). This burden is particularly heavy here, as "[i]n securities case after securities case from 1975 forward, the [Supreme] Court has rebuffed requests to imply private rights of action." *Scattered Corp. v. Chicago Stock Exch., Inc.*, 98 F.3d 1004, 1005 (7th Cir. 1996) (citing cases; noting that the Supreme Court "has asked not whether a private action would be a good idea, but whether the legislature has concluded that it is a good idea"); *Olmstead v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2d Cir. 2002) (courts "cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided"; rejecting attempt to create implied private right of action under Investment Company Act §§ 26(f) and 27(i)). Plaintiffs cannot meet that burden here.

In several recent landmark opinions, the Supreme Court, voicing its ever-increasing hostility to implied private rights of action under federal statutes, has made clear that where, as in Section 12(b), the text and structure of a statute do not demonstrate that Congress intended a private right of action, there is no implied private right of action. *Gonzaga*, 536 U.S. at 283-86 (refusing to recognize "anything short of an unambiguously conferred right" as supporting an implied private right of action); *Alexander v. Sandoval*, 532 U.S. 275, 286-88 (2001) (analyzing intent of Congress in rejecting private right of action). The inquiry into the existence of an implied private right of action "begins with the text and structure of the statute . . . and ends once it has become clear that Congress did not provide a cause of action." *Id.* at 289 n.7 (emphasis added); *Gonzaga*, 536 U.S. at 283, 285-86. There is then to be no review of the legislative history or the overall purpose of the legislation. *Id.* As a result, there is no implied private right of action for damages where (1) the statutory provision is not "phrased in terms of the persons benefited" (*i.e.*, does not specifically identify the persons to be benefited if a violation of the statute occurs), but instead states "institutional policy and practice" (*i.e.*, prohibiting conduct in general or "focus[ing] on the person regulated rather than the individuals protected"), or (2) does not set forth a damages remedy, or (3) is unclear as to whether a remedy is granted to a class of persons including the named plaintiff. *Sandoval*, 532 U.S. at 286-91; *Gonzaga*, 536 U.S. at 283-88; *accord Reyn's Pasta Bella, LLC v. Visa U.S.A.*, 259 F. Supp. 2d 992, 1002-03 (N.D. Cal. 2003) (rejecting attempt to imply private right of action under Bank Service Company Act).[3]

Here, the text and structure of Section 12(b) demonstrate that Congress did not intend to create an implied private right of action for damages under that section. Nowhere does Section 12(b) authorize an action for damages by investors, funds, or any other private entity, as Supreme Court dictates require. *Gonzaga*, 536 U.S. at 284-85 ("a plaintiff suing under an implied

---

[3] Lower courts following *Sandoval* have consistently rejected efforts to imply private rights of action into the ICA. *See e.g., In re Merrill Lynch & Co., Inc. Research Sec. Litig.*, 272 F. Supp. 2d 243, 258 (S.D.N.Y. 2003) (finding no private right of action under Section 34(b); noting that "since the Second Circuit's decision in *Olmstead* [in 2002] there appear to have been no decisions in which a court has found an implied private right of action under any section of the 1940 Act"); *meVC Draper Fisher Jurvetson Fund I, Inc. v. Millennium Partners L.P.*, 260 F. Supp. 2d 616 (S.D.N.Y. 2003) (no private right of action under Section 12(d)(1)(A)).

right of action still must show that the statute manifests an intent to 'create not just such a private *right* but also a private *remedy*'") (citation omitted; emphases in original). To the contrary, as in *Sandoval*, "rights-creating language . . . is completely absent" from the provision in question, and its language and structure show that no implied private right of action or remedy thereunder was ever intended by Congress. *Sandoval*, 532 U.S. at 288; *see also Gonzaga*, 536 U.S. at 283-84 ("we have held that the question whether Congress . . . intended to create a private right of action is definitively answered in the negative" where the provision in question "by its terms grants no private rights to any identifiable class"). Moreover, Section 12(b) "focus[es] on the persons regulated" (in this case, the investment companies at issue), rather than on the individuals protected. *See, e.g., Burks v. Lasker*, 441 U.S. 471, 478 (1979) (noting that the ICA "functions primarily to 'impos[e] controls and restrictions on the internal management of investment companies'" (citation omitted). Congress' focus in Section 12 on regulating distribution practices, rather than on conferring rights on any private parties, confirms the absence of any intent to create private rights.

Congress' intent under Section 12(b) is further confirmed by the express language it used in other sections of the same statute where it did intend to authorize private suits. In particular, Section 36(b) expressly provides for enforcement "by the [Securities and Exchange] Commission, or by a security holder of [the] registered investment company" under limited conditions. 15 U.S.C. § 80(a)-35(b). No such language authorizing shareholder action exists in Section 12(b). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29-30 (1997) (citation omitted); *Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 22 n. 13 (1979) ("[t]he 1970 amendments to the [Investment Company] Act are another clear indication that Congress knew how to confer a private right of action when it wished to do so") (citations omitted). When Congress wished to provide a private remedy for shareholders of mutual funds, it clearly "knew how to do so and did so expressly." *Id.* at 20-21. It did not do so for Section 12(b). That fact alone conclusively demonstrates the absence of any intent to create a

private right of action under that provision. *See, e.g., id.* at 20 (noting that "it is highly improbable that Congress absentmindedly forgot to mention an intended private action" in a provision when it expressly authorized private suits in another section of the same statute).

### 2. Section 36(b) is plaintiffs' exclusive remedy for excessive fee claims.

Count IV fails for the additional reason that Section 36(b) is plaintiffs' exclusive remedy. Plaintiffs cannot circumvent Section 36(b) by attempting to invoke other provisions of the ICA. *Krinsk v. Fund Asset Mgmt.*, 875 F.2d 404, 413 (2d Cir.) (rejecting purported claim under 12(b) as improper effort to evade the requirements of Section 36(b)), *cert. denied*, 493 U.S. 919 (1989); *Green v. Fund Asset Mgmt, L.P.*, 19 F. Supp. 2d 227, 233-34 (D.N.J. 1998). Here, as in *Krinsk*, plaintiffs cannot avoid the stringent limits applicable to Section 36(b) claims simply by purporting to invoke Section 12(b), which does not afford a private right of action. Because Count IV attempts to assert a claim that does not exist, it should be dismissed with prejudice.

### 3. Count IV does not satisfy the requirements of Rule 23.1.

Even if Section 12(b) created a private right of action, plaintiffs would not be able to pursue such a claim here. Like all their claims, plaintiffs purport to assert Count IV derivatively on behalf of the ten Funds. *See, e.g.*, Complaint ¶ 39 ("This action is a derivative action brought by Plaintiffs on behalf of the Funds"); Caption (seeking relief "for the use and benefit of" the Funds). All derivative claims of this kind (other than claims under ICA Section 36(b)[4]) require plaintiffs to satisfy specific procedures to claim the right to proceed on behalf of each entity they do not control and for which they are not otherwise authorized to speak. Plaintiffs have not done so.[5] Count IV therefore should be dismissed.

---

[4] Under *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523 (1984), Section 36(b) claims are unusual among derivative actions in that the statute permits shareholders to assert such claims on behalf of their Funds without a demand on the board.

[5] Plaintiffs have also failed to satisfy the technical requirements of Federal Rule of Civil Procedure 23.1, which expressly provides that all derivative complaints "shall be verified." Fed. R. Civ. P 23.1; *See, e.g., In re Stratus Computer, Inc. Sec. Litig.*, No. 89-2075-Z, 1992 WL 73555, at *10 (D. Mass. Mar. 27, 1992) ("Verification is another safeguard to ensure that complaints in derivative suits are well-grounded in fact and to prevent frivolous litigation"). Since the Complaint is not verified, it merits dismissal on its face.

It is well established that decisions to pursue litigation properly belong to the board members of the entity on whose behalf plaintiffs purport to bring an action. *See, e.g., Spiegel v. Buntrock*, 571 A.2d 767, 773 (Del. 1990) ("The decision to bring a law suit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation. Consequently, such decisions are part of the responsibility of the board of directors.") (citation omitted). Plaintiffs' attempt to usurp the boards' power to pursue those decisions via a derivative suit is governed by the law of the state of incorporation of each entity. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90 (1991). Rule 23.1 of the Federal Rules of Civil Procedure, in turn, requires that the facts necessary to meet state law requirements for demand (or futility) be pled with particularity. *Id.* at 96. This standard cannot be satisfied by "conclusory statements or mere notice pleading," but rather requires specific, detailed facts. *See, e.g., Gonzalez Turul v. Rogatol Distribs., Inc.*, 951 F.2d 1, 2-3 (1st Cir. 1991); *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000) (analyzing parallel Delaware standard). Unless and until plaintiffs supply such facts in sufficient detail to establish standing to proceed on behalf of each entity under the laws of the entity's state of incorporation, their claims merit dismissal. *Id.*

Here, plaintiffs allege that the Funds in question are organized under the laws of Maryland (Templeton Growth Fund, Mutual Shares Fund, U.S. Government Securities Fund, Franklin Income Fund, Franklin Dynatech Fund, and Franklin Utilities Fund), Massachusetts (Franklin Value Investors' Trust), and Delaware (the remaining Funds). Complaint ¶ 35. The law in each of these jurisdictions requires would-be derivative plaintiffs to either make a demand that the directors or trustees pursue a claim, or demonstrate that such demand would be futile. *See, e.g., Werbowsky v. Collomb*, 766 A.2d 123 (Md. 2001) (Maryland law requires demand on the board); *Harhen v. Brown*, 730 N.E.2d 859 (Ma. 2000) (Massachusetts law requires demand on the board); *Spiegel*, 571 A.2d at 773 (under Delaware law, would-be derivative plaintiffs "must first exhaust intracorporate remedies by making a demand on the directors to obtain the action desired, or . . . plead with particularity why demand is excused"). Consistent with these requirements and the pleading standards of Federal Rule 23.1, plaintiffs must supply particularized facts satisfying the demand requirement under the law of each of these states in order to proceed.

Count IV does not meet the demand requirement in any respect. Nowhere do plaintiffs claim to have made a litigation demand on the governing body of any Fund. Instead, they simply state that none is required for Section 36(b) claims. Complaint ¶ 28. That allegation, although correct, is irrelevant to, and does not excuse the failure to make demand for, the non-Section 36(b) claims – *i.e.*, Counts IV – XI. Moreover, plaintiffs do not even attempt to supply allegations that would suffice to excuse demand. Indeed, the closest they come is the summary assertion that "the directors are in all practical respects dominated and unduly influenced by Defendants." Complaint ¶ 16. Summary assertions of this kind are inadequate under any standard. *See, e.g., Aronson v. Lewis*, 473 A.2d 805, 816 (Del. 1984) ("shorthand shibboleth of 'dominated and controlled directors' is insufficient" to excuse demand), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). Plaintiffs therefore have not alleged facts sufficient to excuse demand – a fact that is fatal to their proposed claims in Count IV.

### C. In the Absence of Viable Federal Claims, the Court Should Not Exercise Supplemental Jurisdiction Over Plaintiffs' State Claims, All of Which Otherwise Should Be Dismissed on Multiple Grounds.

In light of the invalidity of plaintiffs' federal claims, there is no basis for the exercise of supplemental jurisdiction over the state law claims that remain – *i.e.*, Counts V-XI. Dismissal of the federal claims therefore should be followed by dismissal of the remaining state law claims. *Bryant v. Adventist Health Sys./West*, 289 F.3d 1162, 1169 (9th Cir. 2002) ("district courts may decline to exercise supplemental jurisdiction over a [state-law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Lappin v. Laidlaw Transit Inc.*, 179 F. Supp. 2d 1111, 1127 (N.D. Cal. 2001) (declining to exercise supplemental jurisdiction over state claim; dismissing without prejudice following dismissal of federal causes of action).

\*\*\*\*\*

To the extent the Court elects to retain jurisdiction, the state law claims are flawed and merit dismissal on multiple independent grounds.[6]

---

[6] Parenthetically, defendants do not necessarily view plaintiffs' references to California law as appropriate, as various funds are based in other states, and their relationships with and duties

1.  **All state claims should be dismissed for failure to satisfy the standard applicable to derivative claims.**

As noted above, "[t]his action is a derivative action brought by Plaintiffs on behalf of the Funds." *See supra* at B.2. Because plaintiffs have neither made nor excused demand with respect to any of their non-Section 36(b) claims – including Counts V through XI – they lack any right to proceed with such claims on behalf of any Fund. The Court therefore should dismiss Counts V through XI in their entirety.

2.  **Count V does not state a legally cognizable claim for breach of fiduciary duty.**

Plaintiffs next accuse all defendants of breaching fiduciary duties under California law. *See, e.g.,* Complaint Count V. The claims alleged, however, are too vague to satisfy even the most liberal pleading standard. In this Count, plaintiffs summarily accuse all defendants of breaching fiduciary duties to all plaintiff Funds. Id. 100-101. Yet defendants cannot possibly owe fiduciary duties to Funds with whom they have "no formal relationship whatsoever." *Cruz v. U.S.A.*, 219 F. Supp. 2d 1027, 1039 (N.D. Cal. 2002), 2003 (dismissing fiduciary duty claim; declining to even address factors applicable to determination of fiduciary status when plaintiff did not establish any relationship with defendant), *reconsideration granted in part on other grounds*, 2003 WL 21518119 (N.D. Cal. June 24, 2003). The Complaint does not allege, however, that any relationships – let alone fiduciary relationships – existed between certain defendants and the Funds purporting to assert claims against them. As one example among many, there are no allegations suggesting that Franklin Advisers had any relationship whatsoever with the Templeton Growth Fund, which plaintiffs claim was managed by another party. Complaint ¶ 1. Plaintiffs therefore have no claims on behalf of the Templeton Growth Fund against Franklin Advisors in all events – but Count V purports to contain just such claims. Plaintiffs' broad-brush attempt to

---

owed from other entities may be governed by the laws of other jurisdictions. In light of the various deficiencies in plaintiffs' claims as pled, however, there is no need to reach the question concerning the substantive law applicable to claims asserted on behalf of each fund, as the claims alleged do not state cognizable claims. Accordingly, for purposes of this motion, defendants will respond to plaintiffs' allegations as pled, and will address any further choice of law issues at an appropriate time.

1  accuse all defendants of violating fiduciary duties to all defendants – despite the lack of existence
2  of any duties flowing from all defendants to all Funds – therefore are too vague to properly state
3  claims of any kind. Count V therefore should be dismissed.

### 3. Count VI does not state a legally cognizable claim for conspiracy.

Plaintiffs next accuse defendants of conspiring to breach fiduciary duties. Count VI, Complaint ¶¶ 104-107. This claim fails as well. Under California law, "[t]here is no separate and distinct cause of action for civil conspiracy." *Jacobs v. Philip Morris Inc.*, No. CV03-5087 ABC (AJWX), 2003 WL 23342334, at *5 (C.D. Cal. Sept. 4, 2003) *citing Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 511 (1994). Conspiracy is, instead, a theory under which a party may be held secondarily liable on another underlying legal theory. *Id.* Plaintiffs thus cannot pursue any separate claims for conspiracy.

### 4. Count VII does not state a legally cognizable claim for aiding/abetting.

In Count VII, plaintiffs accuse Franklin Resources of aiding and abetting all defendants in the alleged breaches of fiduciary duties. Complaint ¶¶ 108-111. This claim overlooks the fact that no claims for secondary liability can exist without viable underlying primary claims. Since, as noted above, the Complaint does not establish primary liability for breach of fiduciary duty, it necessarily cannot support secondary liability for such purported breaches.

Plaintiffs' aiding and abetting claims are further defective to the extent they purport to incorporate claims of deliberate fraud on the part of Franklin Resources. Specifically, plaintiffs charge Franklin Resources with knowingly "withholding material information (such as the availability of other advisers to render advisory services at substantially lower prices)." Complaint ¶ 110. All such allegations, based as they are on claims of deliberate deception, are subject to the heightened pleading standards of Federal Rule 9(b) and must be alleged "with particularity." *See, e.g., In re iAsia Works, Inc. Sec. Litig.*, Nos. C-01-3224 SI, C-01-3224, C-01-3225, C-01-3226, C-01-3227, C-01-4828, 2002 WL 1034041, at *5 (N.D. Cal. May 15, 2002) (Rule 9(b) applies where "the gravamen of plaintiffs' complaint is that defendants deliberately concealed facts known to them"). This standard requires that "[a]verments of fraud [] be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v.*

*Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). Fraud allegations that do not meet this standard cannot support claims on any legal theory, and are disregarded in evaluation of any remaining non-fraud allegations. *Id.* at 1105.

Plaintiffs' cursory allegations that Franklin concealed "material information" do not even purport to identify the alleged statements by which it fraudulently concealed information. Complaint ¶ 110. Nor do plaintiffs say who made the statements, to whom, or what impact those statements had. Such vague claims do not approach the standards of Rule 9(b). All allegations of willful concealment of information therefore should be disregarded. *See, e.g., Vess*, 317 F.3d at 1105. Ignoring these improper allegations, plaintiffs are left with nothing more than vague claims that Franklin Resources somehow "caus[ed] Distributors wrongfully to siphon money from the Funds." Complaint ¶ 110. Such vague allegations, which do not even properly identify who was allegedly aided in what form of wrongdoing, cannot support valid claims.

### 5. Count VIII does not state a legally cognizable claim for "action in concert."

In Count VIII, plaintiffs offer a nebulous claim for secondary liability on a theory that all defendants "acted in concert" under the Restatement (Second) of Torts in supporting breaches of fiduciary duty. Complaint ¶¶ 112-116. Setting aside the anomalous form of this pleading, this claim once again falls flat due to the lack of any underlying breach of fiduciary duty for which defendants might be liable. Moreover, even if the Complaint could establish primary liability, it could not impose secondary liability of any kind without specific allegations as to what the alleged secondary actor did and knew. Restatement (Second) of Torts § 876(b) (1977) (requiring that assisting defendant "know[] that the other's conduct constitutes a breach of duty and give[] substantial assistance or encouragement to the other"). Because Count VIII does not allege, even summarily, that any defendant other than Franklin Resources had knowledge or gave aid, it cannot support claims against the remaining defendants.

### 6. Count IX does not state a legally cognizable claim under Section 17200.

In Count IX, plaintiffs attempt to add claims under Business & Professions Code section 17200 against Franklin Resources. These claims are invalid on their face. It is well established

that section 17200 does not apply to securities transactions. *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777, 790 (2004). Because Count IX, by definition, implicates securities transactions – mutual fund purchases and management – and directly implicates matters regulated by the federal securities laws, plaintiffs' claims cannot stand.

In an apparent effort to circumvent *Bowen*, plaintiffs disclaim reliance on allegations of securities fraud for this count. *See* Complaint ¶ 118. This boilerplate disclaimer does not alter the fact that the claims at issue revolve entirely around mutual fund securities. *See, e.g., In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) (nominal attempts to "specifically disclaim[] any allegations of fraud with respect to its Section 11 claims . . . are unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims levied"). Since the facts as alleged directly and necessarily implicate securities, plaintiffs cannot avoid the application of *Bowen* here.

Count IX is further defective in that it rests entirely on a theory of deliberate concealment of information, and thus on claims of "fraudulent" and "deceptive" practices. Complaint ¶ 124. As noted in Section III.C.4, all such claims sound in fraud, and are therefore subject to a heightened pleading standard which plaintiffs do not satisfy. *See id*. Plaintiffs therefore have not stated a valid claim under section 17200.[7]

---

[7] The lack of clarity in plaintiffs' allegations raises the specter of yet another potential flaw in their claims. As noted, plaintiffs' claims are derivative in nature according to the terms of their Complaint. Moreover, plaintiffs have not alleged a right to proceed on behalf of a class, and have not presented allegations sufficient to sustain a class action in any event. However, to the extent their section 17200 claim purports to seek relief on behalf of "all other investors in the Funds" (*see* Complaint ¶ 124), their claims would be pre-empted by the Securities Litigation Uniform Standards Act ("SLUSA"). SLUSA bars any "covered class action based upon the statutory or common law of any State" that alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1); *see, e.g., Patenaude v. Equitable Life Assurance Soc. of U.S.*, 290 F.3d 1020 (9th Cir. 2002) (holding §§ 17200, 17500 claims preempted by SLUSA); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993 (C.D. Cal. 2002) (mutual fund shares are "covered securities"). A "covered class action," in turn, includes an action where "one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated." 15 U.S.C. § 77p(f)(2)(A). Any attempt to seek relief in Count IX on behalf of other unnamed parties therefore would be pre-empted, and thus subject to dismissal.

### 7. Count X does not state a legally cognizable claim for false advertising.

Plaintiffs' next claim, Count X, expressly rests on fraud. By their own admission, plaintiffs' false advertising claims are based on allegations of "statements which were untrue and misleading, and which were known, or which by the exercise of reasonable care should have been known, to be untrue or misleading." Complaint ¶ 126. These allegations, on their face, implicate Rule 9(b), and merit dismissal for failure to satisfy that standard. *See supra* at III.C.4. More fundamentally, the facts alleged would not undermine the truth of any of the challenged statements in any event.[8] And once again, while these claims are in truth derivative in nature, any claims that plaintiffs purport to bring on behalf of investors rather than the Funds themselves are pre-empted in their entirety under SLUSA. *See supra* at III.C.6.

### 8. Count XI does not state a legally cognizable claim for unjust enrichment.

In their final count, plaintiffs accuse all defendants of unjustly enriching themselves at the expense of the Funds. Complaint ¶¶ 133-136. Yet once again, these claims are so vague as to fail to satisfy even lenient pleading standards. Unjust enrichment claims require, among other things, allegations that a specific defendant was unjustly enriched at the expense of an identified plaintiff. *See* Restatement (First) of Restitution § 1 (1937). Here, plaintiffs do not allege which defendant purportedly was unjustly enriched at the expense of which Fund. Nor do they attempt to quantify the amount of the alleged unjust enrichment. Instead, as with their fiduciary duty claims, plaintiffs leave defendants, and the Court, to speculate as to which entities plaintiffs claim misused which Fund. Plaintiffs' inadequate allegations could be construed as alleging that parties without any formal relationship (or even contact) with the plaintiff Funds somehow misappropriated funds from them — allegations which merit outright dismissal to the extent

---

[8] In addition, plaintiffs challenge what is largely puffery – *i.e.*, vague statements of high quality and excellent service. These statements make no representations concerning fees, and therefore are not undermined in any way by plaintiffs' allegations. *See, e.g.*, Complaint ¶ 128. Plaintiffs have no basis for accusing any defendant of false advertising based on these statements. *See, e.g., Atari Corp. v. 3DO Co.*, No. C 94-20298 (EAI), 1994 WL 723601 (N.D. Cal. May 16, 1994) (dismissing claims based on inactionable puffery).

plaintiffs are attempting to present them. In the absence of even the most basic articulation as to which defendant faces accusations from which Fund, plaintiffs' claims should be dismissed.

### III. CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court dismiss the First Amended Complaint in its entirety.

Dated: August 27, 2004

Meredith N. Landy
Dale Edmondson
O'MELVENY & MYERS LLP

By: /s/ Meredith N. Landy
      Meredith N. Landy

Daniel A. Pollack, Esq.
Edward T. McDermott, Esq.
Anthony Zaccaria, Esq.
POLLACK & KAMINSKY
114 West 47th Street
New York, NY 10036

Attorneys for FRANKLIN RESOURCES, FRANKLIN ADVISERS, INC., FRANKLIN TEMPLETON DISTRIBUTORS, INC., TEMPLETON GLOBAL ADVISORS, LTD., FRANKLIN ADVISORY SERVICES, LLC., FRANKLIN MUTUAL ADVISERS, LLC, AND FRANKLIN TEMPLETON SERVICES, LTD.