IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN STRIGLIABOTTI, et al., | No. C 04-00883 SI |
| Plaintiffs, | **ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| FRANKLIN RESOURCES, INC., et al., | |
| Defendants. | |

On February 4, 2005, the Court heard oral argument on defendants' motion to dismiss the complaint. Having carefully considered the arguments of counsel and the papers submitted, the Court hereby PARTIALLY GRANTS and PARTIALLY DENIES defendants' motion.

**BACKGROUND**

This action is brought by shareholders of several mutual funds ("Funds") created, sold, advised, and managed as part of the Franklin Templeton fund family ("the Fund Complex"). Specifically, the Funds are Templeton Growth Fund, Franklin Balance Sheet Investment Fund, Franklin U.S. Government Securities Fund, Franklin Flex Cap Growth Fund, Franklin DynaTech Fund, Franklin Income Fund, Franklin Small-Mid Cap Growth Fund, Franklin Biotechnology Discovery Fund, Mutual Shares Fund, and Franklin Utilities Fund. First Am. Compl. ("Am. Compl.") at ¶ 1.[1]

Defendants are Franklin Resources, Inc., Templeton Global Advisors, Ltd., Franklin Advisory

---

[1] On March 4, 2004, plaintiffs filed this action on behalf of five funds; they amended the complaint on June 3, 2004, adding Franklin Income Fund, Franklin Small-Mid Cap Growth Fund, Franklin Biotechnology Discovery Fund, Mutual Shares Fund, and Franklin Utilities Fund as plaintiffs, and adding as defendants Franklin Mutual Advisers, LLC, and Franklin Templeton Services, LLC.

Services, LLC, Franklin Advisers, Inc., Franklin Templeton Distributors, Inc., Franklin Mutual Advisers, LLC, and Franklin Templeton Services, LLC. Id. at ¶ 2. The companies are various investment advisors affiliated with a single parent company, also a defendant, Franklin Resources, Inc. ("Franklin Resources"), a publicly traded company incorporated in Delaware and headquartered in San Mateo, California. Id. Plaintiffs allege that defendants receive advisory fees from the Funds for investment advisory services and administrative services, and these fees are based on a percentage of the net assets of each of the Funds. Id. at ¶ 5. Defendants also charge distribution fees for marketing, selling, and distributing mutual fund shares to new shareholders under "Distribution Plans" adopted pursuant to Rule 12b-1, 17 C.F.R. § 270.12b-1. Id. at ¶ 8. These distribution fees are based on a percentage of the net assets of each of the funds in the Fund Complex and amount to more than $7 million annually. Id. Plaintiffs allege that the advisory fees charged by defendants are higher than those for other funds for which defendants perform equivalent services and that the distribution fees are excessive, in violation of Rule 12b-1 and § 36(b) of the Investment Company Act ("ICA"). Plaintiffs specifically claim that, despite significant growth in the Funds since 1983, the Funds have not benefitted from the economies of scale and instead have been charged advisory and distribution fees that are disproportionately large in relation to the services provided. Id. at ¶ 14.

Plaintiffs seek to either rescind the investment advisory agreements and Distribution Plans and recover the total fees charged by defendants, or, in the alternative, to recover the excess profits resulting from economies of scale wrongfully retained by defendants, and any other excessive compensation or improper payments received and retained by defendants in breach of their fiduciary duty under § 36(b), 15 U.S.C. § 80a-35(b), and state law. Id. at ¶ 27. The complaint alleges (1) breach of fiduciary duty under § 36(b) for excessive investment advisory fees; (2) breach of fiduciary duty under § 36(b) for excess profits from economies of scale; (3) breach of fiduciary duty under § 36(b) for excessive Rule 12b-1 distribution fees and extraction of additional compensation for advisory services; (4) violation of § 12(b) for unlawful distribution plans; (5) breach of fiduciary duty under California law; (6) civil conspiracy to breach fiduciary duty under California law; (7) common law aiding and abetting breaches of fiduciary duty by Franklin Resources; (8) "acting in concert" under § 876(b) of the Restatement (Second) of Torts; (9) breach of Cal. Business & Professions Code § 17200; (10) breach of Cal. Business & Professions Code § 17500; and (11) common law

unjust enrichment.

Now before the Court is defendant's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Both parties have also filed Requests for Judicial Notice ("RJN").[2]

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 104 S. Ct. 3012 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. See Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. See United States v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

"The court may also consider documents attached to the complaint in connection with a FRCP 12(b)(6) motion to dismiss." Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)(quoting Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir. 1980)). "If a plaintiff fails to attach to the complaint the documents on which it is based, defendant may also attach to a FRCP 12(b)(6) motion the documents referred to in the complaint." Lee v. City of Los Angeles, 250 F.2d 668, 688-89 (9th Cir. 2001)). "In addition, whether requested or not, the court may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiffs' pleadings." In re Silicon Graphics Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999)). "On a motion to dismiss, [the court] may take judicial notice of matters . . . outside the pleadings." MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth

---

[2] The Court GRANTS both RJNs.

Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F. 3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## DISCUSSION

### I. Section 36(b) claims

An action may be brought under Section 36(b) by a security holder of a registered investment company "on behalf of such company" against an investment adviser, "or any affiliated person of such investment adviser," for breach of fiduciary duty with respect to compensation or payments paid to the investment adviser. 15 U.S.C. § 80a-35(b). Plaintiffs bring Counts I, II, and III under Section 36(b) of the Investment Company Act of 1940 ("ICA") on behalf of the Funds. Defendants' motion attacks these claims on two grounds: (1) that the Complaint does not plead sufficient facts that the fees charged are "so disproportionately large that they bear no reasonable relationship to the services rendered"; and (2) that defendants Franklin Resources and Franklin Templeton Services must be dismissed from these claims because they are not "recipients" of compensation or payments, as Section 36(b) requires.

#### A. Sufficiency of facts

To state a claim under Section 36(b), a plaintiff must allege that an advisory fee is "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." Gartenberg v. Merrill Lynch Asset Mgmt. Inc., 694 F.2d 923, 928 (2d Cir. 1982). Federal courts have identified the relevant factors in applying this standard: "(a) the nature and quality of the services provided to fund shareholders; (b) the profitability of the fund to the adviser-manager; (c) fall-out benefits; (d) economies of scale; (e) comparative fee structures; (f) the independence and conscientiousness of the trustees." Krinsk v. Fund Asset Mgmt., Inc., 875 F.2d 404, 409 (2d Cir. 1989).

Relying on Migdal v. Rowe-Price-Fleming Int'l, Inc., 248 F.3d 321, 327 (4th Cir. 2001) and Sheldon Krantz v. Prudential Inv. Fund Mgmt., 305 F.3d 140 (3d Cir. 2002), defendants argue that plaintiffs have failed to plead facts that would show "a disproportionality between fees charged and services rendered," Defs.' Mot.

*United States District Court — For the Northern District of California*

at 2:22-23, because they have not specified what services were rendered by defendants, what amounts were charged in fees, or any other circumstances of the relationship between the fees and services. Id. at 3:3-11. Defendants contend that while the complaint references the Gartenberg factors, it fails to allege any underlying facts. Plaintiffs contend that they have alleged a factual basis for each of the six Gartenberg factors and that Migdal and Sheldon Krantz involved significantly different and more deficient complaints.

The Court agrees with plaintiffs. In Migdal, the plaintiffs alleged several facts as evidence of excessive fees – the amount of fees charged, that other funds offered lower rates, that the funds did not meet their benchmark performance standards, and that the advisers' earnings increased by more than 20 percent despite the funds' underperformance – but said nothing about the services rendered in return. The district court permitted the plaintiffs to amend their complaint twice, but ultimately concluded that plaintiffs had failed to address the relationship between the fees and services. The Fourth Circuit affirmed, finding that the one-sided nature of the allegations was fatal to the complaint. In Krantz, the complaint contained a very brief (three-sentence) statement of the Section 36(b) excessive fee allegation but no facts to support it. The Third Circuit adopted the Migdal court's approach and found that the plaintiffs had "failed to allege any facts indicating that the fees received were disproportionate to services rendered." Krantz, 305 F.3d at 143.

Here, plaintiffs have alleged facts about the disproportionate relationship between fees and services. The complaint alleges that defendants charge plaintiffs much higher fees than other clients for equivalent advisory services, and offers an example of the lower fee schedule utilized in a contract with New York State. Am. Compl. ¶ 6-7; 65. The Funds have grown in size from $2 billion in assets in 1983 to $300 billion in assets in 2003, while the nature of the services rendered has not changed, resulting in disproportionately large advisory fees. Id. at ¶¶ 13-14. It alleges that defendants "have retained excess profits resulting from economies of scale . . . [which] are a product of the dramatic growth in assets managed by Defendants, caused in part by 1) marketing programs paid for with the distribution fees charged to Plaintiffs, and 2) Defendants' ability to provide the identical investment advisory services they provide Plaintiffs to other clients at little or no additional cost." Id. at ¶ 15.

The Court finds that these allegations suffice under Rule 8's liberal pleading standard. Unlike in Migdal, where the plaintiffs alleged only half of the equation (facts about the high fees but no facts about the services),

5

plaintiffs here state the services rendered to plaintiffs ("[d]efendants buy and sell, at their discretion, stocks, bonds, and other securities for the Funds. This is precisely the same service provided to Defendants' institutional and other clients."). Id. at ¶ 46. Unlike the allegations in both Migdal and Krantz, the complaint specifically describes the disproportionate relationship between these services and the fees charged according to the Gartenberg factors. And unlike the allegations in Yampolsky v. Morgan Stanley Investment Advisers, 2004 WL 1065533 (S.D.N.Y. May 12, 2004), which defendants cite in their reply brief, plaintiffs do not simply rely on "speculation, inference and generalized observations about the securities industry from public figures." 2004 WL 1065533 at *2. Accordingly, the Court DENIES defendant's motion to dismiss Counts I, II, and III.

### B. Franklin Resources and Franklin Templeton Services as defendants

Defendants also argue that Franklin Resources and Franklin Templeton Services are not proper defendants for the Section 36(b) claim because neither is "the recipient of such compensation or payments." Plaintiffs contend that the statute's language allows actions brought "against [an] investment adviser, or any affiliated person of such investment adviser," and that these defendants qualify both as affiliates and as persons receiving compensation.

Section 36(b) provides:

> An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser . . . for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply: . . .
>
> (3) No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments.

15 U.S.C. § 80a-35(b), (b)(3).

Plaintiffs base their contention that Franklin Resources and Franklin Templeton Services are "affiliated persons" on the fact that Franklin Resources is the "parent company, and control person," of all defendants, and Franklin Templeton Services is a wholly owned subsidiary of Franklin Resources under common control with the other

6

defendants.[3] Pls.' Opp'n at 8 n. 7. Plaintiffs argue that Franklin Resources is a control person because the adviser defendants are wholly-owned subsidiaries of it, and Franklin Resources determines their policies and practices with respect to fees.

However, as defendants point out, Section 36(b) subsection (3) apparently limits liability to "recipients of such compensation," and Franklin Resources' control person status is not relevant to this analysis. The complaint does not allege which defendants received fees, and specifically does not mention any non-adviser defendant receiving fees from the Funds. In their Opposition, plaintiffs state that these two defendants "receive compensation from the Funds and Plaintiffs," Pls.' Opp'n at 9:8-9, but the Court agrees that they have not made this allegation in the complaint.

Consequently, Counts I, II, and III are DISMISSED as to defendants Franklin Resources and Franklin Templeton Services with leave to amend to add any allegations that these two non-advisers receive compensation within the meaning of Section 36(b).

## II. Section 12(b) claim

Count IV alleges a violation of ICA Section 12(b), which provides: "[i]t shall be unlawful for any registered open-end company . . . to act as a distributor of securities of which it is the issuer . . . in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 80a-12(b). Defendants move to dismiss this claim on grounds that (1) there is no private right of action under this section of the ICA; and (2) even if a cause of action can be maintained, plaintiffs have failed to satisfy the requirements of Federal Rule of Civil Procedure 23.1 for derivative claims.

---

[3] The ICA defines "affiliated person" as: (A) any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting securities of such other person; (B) any person 5 per centum or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by such other person (C) any person directly or indirectly controlling, controlled by, or under common control with, such other person." 15 U.S.C. §§ 80a-2(3)(A)-(C). "Control" is defined as "the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company." Id. at § 80a-2(9).

7

### A. Private right of action under Section 12(b)

Defendants argue that Section 12(b) does not create either an express or implied cause of action for private parties. Section 12(b) clearly contains no express private right of action. To demonstrate an implied right of action, plaintiffs must show congressional intent to authorize private enforcement of the section. Gonzaga Univ. v. Doe, 536 U.S. 273, 283-86 (2002); Alexander v. Sandoval, 532 U.S. 275, 286-88 (2001). The Supreme Court has been reluctant to imply private rights of action without clear congressional intent, and lower courts have applied these precedents to the ICA. See, e.g., Olmstead v. Pruco Life Ins. Co., 283 F.3d 429, 432 (2d Cir. 2002) (ICA §§ 26(f) and 27(i)).

For a statute to create a private right, it must be "phrased in terms of the persons benefited," Gonzaga, 536 U.S. 283, and it must also evince an "intent to create not just a private right but also a private remedy." Sandoval, 121 S. Ct. at 1519. Defendants argue that Section 12(b) does not contain "rights-creating language," and that the absence of language authorizing shareholder actions (like that appearing in Section 36(b)) further demonstrates the lack of a private right. In addition, relying on the Second Circuit case of Krinsk v. Fund Asset Mgmt., Inc., supra, 875 F.2d 404 (2d Cir. 1989), they contend that Section 36(b) is plaintiffs' only remedy for the excessive fee claims. Plaintiffs counter that Section 12(b) does contain language from which a private right of action may be implied; that congressional pronouncements on the ICA and court decisions finding private rights of action in other ICA provisions suggest a right of action under Section 12(b); and that Krinsk is distinguishable.

The Ninth Circuit has not yet addressed this question. In Krinsk, the Second Circuit considered whether Congress intended a private right of action under Section 12(b) where the plaintiff had an adequate remedy under Section 36(b). Krinsk involved a § 12(b) claim based on an allegedly excessive distribution fee where the fee was calculated as a percentage of the assets in the fund regardless of the number of securities sold. Because this type of claim was covered by Section 36(b), and because the plaintiff had included a distribution fee claim as part of his Section 36(b) action, the district court concluded that the claims were indistinguishable and found no private right of action under § 12(b). The Court of Appeals affirmed, though it declined to reach the issue of whether a private right of action might exist for other Section 12(b) claims, like those alleging that a distribution plan fails to conform to the mechanical requirements of Rule 12b-1.

Here, plaintiffs argue that Krinsk is not on point because their Section 12(b) claim is entirely distinct from Count III, the Section 36(b) claim based on "Excessive Rule 12b-1 Distribution fees and Extraction of Additional Compensation for Advisory Services." Am. Compl. at 27. According to plaintiffs, the Section 36(b) claim alleges a breach of fiduciary duty with respect to receipt of compensation, while their Section 12(b) claim alleges that "the Distribution Plans have failed to accomplish what they [were] designed to do," and that the Distribution Plans do not comply with a mechanical Rule 12b-1 requirement. Pls.' Opp'n at 11:23-12:5; see Am. Compl. ¶ 75(c). Thus, they contend that their Section 12(b) claim is not precluded by Krinsk, and that the Court should consider whether a private right of action exists and find that it does.

The Court finds Krinsk persuasive in this case and applicable to these facts. Contrary to plaintiffs' contention, their Section 12(b) claim is not "entirely distinct" from Count III. Under Section 36(b), plaintiffs allege that "[t]he distribution fees charged and received by Defendants or their affiliates were designed to, and did, extract additional compensation for Defendants' advisory services in violation of Defendants' fiduciary duty under § 36(b)," and that "[i]n failing to pass along economies-of-scale benefits from the distribution fees, and in continuing to assess distribution fees pursuant to plans of distribution despite the fact that no benefits inured to Plaintiffs, Defendants have violated, and continue to violate, the ICA." Id. at ¶¶ 87-88. The Section 12(b) claim alleges that defendants violated § 12(b) and 17 C.F.R. § 270.12b-1 "by accepting excessive or inappropriate compensation in violation of the fiduciary duty owed by them to the Funds"; that they have "spent fund assets on distribution over and above the limits imposed on 12b-1 payments, hiding such payments in brokerage expense costs"; that they have "treated individual fund shareholders such as Plaintiffs improperly by diverting their 12b-1 payments to illicit rebates or illicit payoffs to fiduciaries . . . with no corresponding benefits flowing to Plaintiffs or the other fund shareholders"; that "[t]he wrongful rebates and other payments represent undisclosed discriminatory diversions of fund assets in breach of Defendants' fiduciary duties"; and that defendants have violated § 12(b) and Rule 12b-1 "by accepting excessive or inappropriate compensation, or by making improper uses of fund assets, in violation of the fiduciary duty owed by them to the Funds." Am. Compl. ¶¶ 93-97. The gravamen of both claims is breach of fiduciary duty, a claim expressly authorized under Section 36(b), and fully remediable through plaintiffs' Section 36(b) claim. Consequently, the Court need not reach the question of whether an implied right of action exists generally under Section 12(b).

9

Defendants' motion to dismiss Count IV is GRANTED and the claim is DISMISSED with prejudice.

### B. Rule 23.1 requirements

Because the Court concludes that there is no private right of action under Section 12(b), it does not reach the question of whether plaintiffs must comply with Rule 23.1 in asserting this claim.

## III. Counts V-XI (state law claims)

Plaintiffs have brought seven state claims: breach of fiduciary duty; civil conspiracy to breach fiduciary duties; common law aiding and abetting breaches of fiduciary duty by Franklin Resources; acting in concert under Restatement (Second) of Torts § 876(b); a violation of Cal. Bus. & Profs. Code § 17200; a violation of Cal. Bus. & Profs. Code § 17500 by Franklin Resources (California False Advertising Law); and common law unjust enrichment. Defendants move to dismiss plaintiffs' state claim claims on multiple grounds: (1) supplemental jurisdiction (assuming dismissal of the federal claims); (2) failure to comply with the requirements of Rule 23.1 for derivative actions; and (3) failure to plead sufficient facts for each claim. Because the Court has not dismissed plaintiffs' Section 36(b) claims, it retains jurisdiction over this action, including any pendent state law claims. Accordingly, it will consider the issue of whether the state claims are direct or derivative and then discuss each claim in turn.

### A. Derivative claims versus direct claims

Defendants contend that plaintiffs' state law claims are derivative claims, because of language in the complaint stating that "[t]his action is a derivative action brought by Plaintiffs on behalf of the Funds." Am. Compl. ¶ 39. As plaintiffs point out, this sentence actually ends "pursuant to §§ 36(b) and 12(b)" of the ICA, id., and thus pertains only to the federal claims. Plaintiffs argue that their state law claims are brought based on individual injuries suffered by themselves and other investors, not injury to the Funds themselves, because of the unique nature and structure of mutual funds.

Under California law, derivative suits are brought when the alleged injury is an injury to the corporation. Jones v. H.F. Ahmanson & Co., 1 Cal. 3d 93, 106 (1969). A mutual fund issues redeemable securities, and

10

the value of mutual fund shares is computed daily "by taking the market value at the time of all portfolio securities, adding the value of other assets and structuring liabilities, and dividing the result by the number of shares outstanding." United States v. Cartwright, 411 U.S. 546, 548 (1973). Every dollar of expense borne by the fund is distributed to shareholders, as a pro rata deduction from the net asset value per share. Fees, likewise, are paid by individual investors. As a result of this financial structure, plaintiffs argue, the investors – not the Funds – have paid overcharges and been injured by them. The injury to each shareholder can be "severed from any injury to other shareholders because each shareholder had a distinct and separate amount directly and permanently subtracted from the value of his or her shares." Pls.' Opp'n at 23:2-4.

Applying the rule of Jones v. H.F. Ahmanson, the Court is persuaded that plaintiffs' state claims are direct claims. In determining whether a claim is derivative or direct, the central question is whether there is a corporate injury alleged. Corporate injury is required under the state laws of all states of incorporation for the Funds. See Jones, 1 Cal. 3d at 106; Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Delaware); Strougo v. Bassini, 282 F.3d 162, 172 (2d Cir. 2002) (Maryland); Blasberg v. Oxbow Power Corp., 934 F. Supp. 2d 21, 26-27 (D. Mass. 1996) (Massachusetts). Here, plaintiffs do not allege injury to the Funds themselves, but rather individual injury. Indeed, the financial harm from overcharges is harm to the individual investors, who own the Funds' assets and bear its expenses directly on a pro rata basis. Accordingly, the requirements of Rule 23.1 do not apply to these claims. In addition, these requirements do not apply to actions under § 36(b) of the ICA, and thus plaintiffs were not required to make a pre-suit demand on the board of directors of the Funds. Daily Income, Inc. v. Fox, 464 U.S. 523 (1984).

///

### B. Individual claims

#### 1. Breach of fiduciary duty

Defendants contend that Count V should be dismissed because it claims a breach by all defendants of duties to all plaintiffs, without further allegations of where the fiduciary relationships run. Plaintiffs argue that

Rule 8 does not require this level of detail, that their allegations are sufficiently specific, and that fiduciary duties are alleged for each defendant to each Fund for which it provided advisory services. The Court agrees with plaintiffs that the claim comports with the requirements of notice pleading. Defendants' motion to dismiss is DENIED as to Count V.

### 2. Civil conspiracy

Defendants' motion to dismiss Count VI is based on the assumption that Count V will be dismissed and that there can be no secondary liability without primary liability. Because the Court has denied defendant's motion as to Count V, Count VI survives as well.

### 3. Aiding and abetting

Defendants advance the same "secondary liability" argument for dismissal of Count VII, and the Court rejects it on the same basis. Defendants also contend that this claim is defective because it alleges deliberate fraud by Franklin Resources without complying with the heightened pleading requirements of Rule 9(b). Plaintiffs argue that this claim goes beyond its one allegation of concealment, that Rule 9(b) does not apply because the essence of the claim is not fraud but rather control by Franklin Resources, and, in the alternative, that the lone concealment allegation complies with Rule 9(b) because it states that Franklin Resources assisted in the breach of fiduciary duty by "withholding material information (such as the availability of other advisors to render advisory services at substantially lower prices)." Am. Compl. ¶ 110. The Court agrees with plaintiffs that this aider/abettor claim is not based on deliberate fraud and is therefore not subject to Rule 9(b). The allegations in the complaint are sufficient to state a claim.

Consequently, defendants' motion is DENIED as to this claim.

### 4. Acting in concert

Here, defendants argue that the complaint is deficient because it does not allege two defendants with knowledge who give each other assistance or encouragement, as Restatement (Second) of Torts § 876(b) requires. Rather, only Franklin Resources is alleged to have "acted in concert." Plaintiffs argue that its

allegations about Franklin Resources' acts as the parent corporation to determine the fee policies and practices of other defendants suffice for Rule 8.

The Restatement provides for liability "for harm resulting to a third person from the tortious conduct of another" if one party "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other." Restatement (Second) of Torts § 876(b). The Court finds that plaintiffs' allegations state a claim under the Restatement by stating that Franklin Resources determined the fee policies and practices of the other defendants and "gave the other Defendants substantial assistance, advice, direction and/or encouragement to act as they did in breaching their fiduciary duties." See Am. Compl. ¶¶ 113-114. Defendants' motion is DENIED as to this claim.

### 5.  Section 17200

For this claim, the parties dispute the applicability of a recent decision by the California Court of Appeal, Bowen v. Ziasun Technologies, Inc., 116 Cal. App. 4th 777 (2004), holding that Section 17200, California's Unfair Competition Law, does not apply to securities transactions. 116 Cal. App. 4th at 786. Plaintiffs contend that Bowen is limited to violations of the Unfair Competition Law in the purchase or sale of securities, like the fraudulent "Ponzi" scheme at issue in that case, and that a "continuous pattern of unfair business practices that occurred after the securities were purchased" is still actionable under the statute. Pls.' Opp'n at 28:17-18. Defendants argue that Bowen applies to all claims that "implicate[] securities transactions" or "implicate[] matters regulated by the federal securities laws," Defs.' Mot. at 13:3-4, because of "the comprehensive regulatory umbrella of the Securities and Exchange Commission over such transactions." Bowen, 116 Cal. App. 4th at 789 n. 9.

The Court is aware of no authority observing the distinction plaintiffs propose between fraud in the sale of securities transactions and the misleading acts of charging excessive fees to mutual fund holders and misrepresenting the fairness of those fees. However, the Court cannot conclude that Bowen's holding is quite as broad as defendants suggest. The California courts have expressly held that federal securities laws do not preempt Section 17200 generally. Roskind v. Morgan Stanley Dean Witter & Co., 80 Cal. App. 4th. 345 (2000); Bowen, 116 Cal. App. 4th at 790. In addition, Bowen and the cases on which it rests all dealt with

fraud in the sale of securities. See, e.g., Spinner Corp. v. Princeville Dev. Corp., 849 F.2d 388 (9th Cir. 1988). Moreover, even the broad language of the Bowen case is limited to "securities transactions," and does not encompass all situations where securities are somehow implicated but not purchased or sold. The Court finds that Section 17200 may be used to challenge an alleged scheme to overcharge investors in the management of securities.

Accordingly, defendant's motion to dismiss is DENIED as to Count IX.

### 6. Section 17500

Defendants contend that this claim "expressly rests on fraud" and therefore requires compliance with Rule 9(b). Plaintiffs do not respond directly to this argument but rather contend that Franklin Resources was aware of the excessive fees being charged by the other defendants and made misleading public statements about its companies' commitment "to policies that protect the best interests of all our shareholders," to "high quality" and "outstanding" customer service, and to "frugality." Am. Compl. ¶¶ 127-29. Defendants counter that these statements are mere "puffery" and cannot support a false advertising claim.

The Court agrees with defendants that plaintiffs must plead with greater particularity to state a claim for false advertising, and that the statements alleged to be misleading here are not sufficient. Accordingly, this claim is DISMISSED with leave to amend.

### 7. Unjust enrichment

As for Count V, defendants contend that the claim is vague and fails to allege which specific defendants were unjustly enriched at the expense of which plaintiffs, and by how much. The Court rejects this contention, finding that Count XI complies with Rule 8's liberal notice pleading requirement.

Accordingly, defendants' motion to dismiss is DENIED as to Count XI.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby PARTIALLY GRANTS and PARTIALLY DENIES defendant's motion. [Docket # 49]. **Plaintiffs' amended complaint, if they choose**

**to amend, must be filed and served on or before March 21, 2005.**

**IT IS SO ORDERED.**

Dated: March 7, 2005           S/Susan Illston
                               SUSAN ILLSTON
                               United States District Judge