1   DANIEL A. POLLACK *(pro hac vice)*
    EDWARD T. MCDERMOTT *(pro hac vice)*
2   ANTHONY ZACCARIA *(pro hac vice)*
    POLLACK & KAMINSKY
3   114 West 47th Street, Suite 1900
    New York, New York  10036
4   Telephone:  (212) 575-4700
    Facsimile:   (212) 575-6560
5   *dapollack@pollacklawfirm.com*
    *etmcdermott@pollacklawfirm.com*
6   *azaccaria@pollacklawfirm.com*

7   MEREDITH N. LANDY (S.B. #136489)
    DALE M. EDMONDSON (S.B. #189793)
8   O'MELVENY & MYERS LLP
    2765 Sand Hill Road
9   Menlo Park, California  94025
    Telephone:  (650) 473-2600
10  Facsimile:   (650) 473-2601
    *mlandy@omm.com*
11  *dedmondson@omm.com*

12  Attorneys for Defendants
    FRANKLIN RESOURCES, INC., et al.
13

14              **UNITED STATES DISTRICT COURT**

15            **NORTHERN DISTRICT OF CALIFORNIA**

16

17  SUSAN STRIGLIABOTTI,                    Case No. C-04-0883-SI
    on behalf of herself and a class of
18  all persons similarly situated, et al.,   **NOTICE OF MOTION AND MOTION
                                             TO DISMISS; MEMORANDUM OF
19                    Plaintiffs,            POINTS AND AUTHORITIES IN
                                             SUPPORT THEREOF:  RULE 12(b)(6)**
20           v.

21  FRANKLIN RESOURCES, INC.,               Date:    November 4, 2005
    et al.,                                 Time:    9:00 a.m.
22                                          Judge:   Hon. Susan Illston
                      Defendants.
23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

<u>Page</u>

3

I.     WHY THIS MOTION NOW? ...................................................................................1

II.    PRELIMINARY ......................................................................................................2

        A.      Plaintiffs Have Failed To Plead A Legally Cognizable § 36(B) Case ...........3

              1.      The Core Point of This Motion.............................................................3

              2.      Response to Plaintiffs' Anticipated Points .........................................6

        B.      The Court Should Decline To Exercise Supplemental  Jurisdiction Over The State Law Claims ...................................................................................8

        C.      In Any Event, Even If A Federal Claim Is Sustained, The State Law-Based Class Action Claims Must Be Dismissed As Preempted By SLUSA ............8

III.    CONCLUSION......................................................................................................10

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MP1:968781.2

NOTICE OF MOTION AND MOTION TO DISMISS;
POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C-04-0883-SI

1
## **TABLE OF AUTHORITIES**

2
**Page**

3
**CASES**

4
*Atencio v. Smith Barney,*
5
   2005 WL 267556 at **5-6 (S.D.N.Y. Feb. 2, 2005) ..................................................... 9

6
*Benak v. Alliance Capital Management L.P.,*
   2004 U.S. Dist. LEXIS 12231 (D.N.J. Feb. 9, 2004) ................................................. 6

7
*Bryant v. Adventist Health System/West,*
8
   289 F.3d 1162 (9th Cir. 2002) ..................................................................................... 8

9
*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   395 F.3d 25 (2d Cir. 2005) ......................................................................................... 9

10
*Disher v. Citigroup Global Markets, Inc.,*
   2005 U.S. App. LEXIS 17334 at *15-17 (7th Cir. Aug. 17, 2005)............................. 9
11

12
*Dura Pharmaceuticals, Inc. v. Broudo,*
   125 S. Ct. 1627, 2005 U.S. LEXIS 3478 at *20 (April 19, 2005)............................... 7

13
*Falkowski v. Imation Corp.,*
14
   309 F.3d 1123 (9th Cir. 2002) ..................................................................................... 8

15
*Gartenberg v. Merrill Lynch Asset Management, Inc.,*
   694 F.2d 923 (2d Cir. 1982) ................................................................................. 5, 6

16
*In re Eaton Vance Mutual Funds Fee Litig.,*
17
   380 F. Supp. 2d 222 (S.D.N.Y. 2005) ..................................................................... 6, 9

18
*In re Franklin Mutual Funds Fee Litig.,*
   ____ F. Supp. 2d ____, 2005 WL 2175950 at **17-19 (D.N.J. Sept. 9,
19
   2005)............................................................................................................................ 9

20
*In re Lord Abbett Mutual Funds Fee Litig.,*
   ___ F. Supp. 2d ____, 2005 WL 2090517  at *12 (D.N.J. Aug. 30, 2005) ............... 9

21
*Kircher v. Putnam Funds Trust,*
   403 F.3d 478 (7th Cir. 2005) ..................................................................................... 9
22

23
*Krantz v. Prudential Inv. Fund Mgmt. LLC,* 305 F.3d 140 (3d Cir. 2002),
   *cert. denied,* 537 U.S. 1113 (2003) ....................................................................... 3, 6

24
*Lappin v. Laidlaw Transit Inc.,*
25
   179 F. Supp. 2d 1111 (N.D. Cal. 2001)....................................................................... 8

26
*Migdal v. Rowe Price-Fleming Int'l, Inc.,*
   248 F.3d 321 (4th Cir. 2001) .............................................................................. 3, 5, 6, 7

27
*Migdal v. Rowe Price-Fleming Int'l, Inc.,*
   No. AMD 98-2162, 2000 WL 350400 at 3 (D. Md. March 20, 2000)..................5

28

1
2

**TABLE OF AUTHORITIES**
(continued)

**Page**

3  *Patenaude v. Equitable Life Assurance Society of the United States,*
4     290 F.3d 1020 (9th Cir. 2002) ........................................................................ 8

*Rowinski v. Salomon Smith Barney Inc.,*
5     398 F.3d 294 (3d Cir. 2005) ............................................................................ 9

6  *Strougo v. BEA Associates,*
     188 F. Supp. 2d 373 (S.D.N.Y. 2002) ............................................................ 5
7
*Swierkiewicz v. Sorema,*
8     534 U.S. 506 (2002) ........................................................................................ 7

9  *Yampolsky v. Morgan Stanley Investment Advisers Inc.,*
     2004 WL 1065533 (S.D.N.Y. May 12, 2004) ................................................ 6
10

11  **STATUTES**
12
13  15 U.S.C. § 77p(b) .................................................................................................. 8

14  15 U.S.C. § 78bb(f)(1) ............................................................................................ 8

15  Fed. R. Civ. P. Rule 12(b)(6) ......................................................................... 1, 6, 7

16  Fed. R. Civ. P. Rule 8(a) ................................................................................... 6, 7

17  Inv. Co. Act of 1940 § 36(b)....................................................................passim

18
19
20
21
22
23
24
25
26
27
28

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2   PLEASE TAKE NOTICE that on November 4, 2005, at 9:00 a.m., or as soon

3   thereafter as the parties may be heard, defendants Franklin Resources, Inc., Templeton

4   Global Advisers, Ltd., Franklin Advisory Services, LLC, Franklin Advisers, Inc.,

5   Franklin/Templeton Distributors, Inc., Franklin Mutual Advisers, LLC, and Franklin

6   Templeton Services, LLC, will move this Court, pursuant to Rule 12(b)(6), Fed. R. Civ. P.

7   for an Order dismissing the Third Amended Complaint (hereinafter the "Complaint") on

8   the grounds that the Complaint fails to state a claim upon which relief may be granted.

9   Issues to be decided include, *inter alia*, whether the Complaint states a legally cognizable

10  claim under § 36(b) of the Investment Company Act of 1940, whether the Court should

11  exercise supplemental jurisdiction over the state law claims, and whether, alternatively,

12  the state law claims are pre-empted by SLUSA.

13

## MEMORANDUM OF POINTS AND AUTHORITIES

14

### I.

15

### WHY THIS MOTION NOW?

16  Defendants hereby move to dismiss the Third Amended Complaint pursuant to

17  Rule 12(b)(6), Fed. R. Civ. P. In so doing, defendants are well aware that this Court

18  sustained, in significant part, an earlier version of the Complaint (First Amended

19  Complaint). Defendants do not interpose this motion lightly, or without thought, or to

20  delay this case or to burden this Court with needless paperwork. This motion rests on a

21  different and more refined analysis which was not presented to or considered by the Court

22  on the prior motion.[1]

23

24

25

---

26  [1] Subsequent to the determination by this Court of the initial Motion to Dismiss, the <u>same</u>
27  analysis here proffered by Defendants was made to the District Court for the Southern District
    of Texas against the <u>same</u> Complaint (involving a different Fund Complex) filed by the <u>same</u>
28  Plaintiffs' law firm, Messrs. Keller Rohrback. That Complaint was found wanting by the
    District Court on the theory espoused in this motion.

## II.

## PRELIMINARY

The federal claims in the Complaint, all of which are asserted under (and only under) § 36(b) of the Investment Company Act of 1940, (Counts I-III), are an unwieldy agglomeration of entirely separate cases brought by nine different investors, suing derivatively on behalf of eight separate and distinct Franklin Funds.

Since the federal claims asserted on behalf of each Fund are wholly independent of the federal claims asserted on behalf of each of the other Funds, the federal claims asserted on behalf of each Fund must be examined and analyzed separately for legal cognizability on this motion.

The reason for this is quite simple: the fact that the advisory fees for Fund A may be "excessive" does not mean, of course, that the advisory fees for Fund B, or for Fund C or for Fund D are excessive. And, by extension, the fact that a legally cognizable claim for excessive advisory fees may be pleaded as to Fund A does not, of course, mean that a legally cognizable claim for excessive advisory fees is pleaded as Fund B, or Fund C or Fund D. This Court is, in truth, confronted with eight separate cases, one for each of the eight Funds on whose behalf monetary relief is sought.

The text of § 36(b), plus the appellate case law on pleading the substantive elements of a § 36(b) claim, compel dismissal of the § 36(b) claims because there simply are no factual allegations in the Complaint which, if proved, would establish the proposition that any particular Fund identified in the Complaint was charged fees disproportionate to the services rendered to that particular Fund. Under § 36(b), the analysis of "excessiveness" can only be undertaken, both as a matter of statutory text and case law (and common sense), on a Fund-by-Fund basis. In the vernacular, "Each tub rests on its own bottom."

If the federal claims are dismissed, this Court should not exercise supplemental jurisdiction over any of the state law claims. In any event, should it do so, the state law-based class action claims are preempted by SLUSA.

1

2

## A.    PLAINTIFFS HAVE FAILED TO PLEAD A LEGALLY COGNIZABLE § 36(b) CASE

3

### 1.    The Core Point of This Motion

4      Each of the eight Funds involved in the Complaint is different and distinct from the

5  others, each with its own distinct performance, each with its own distinct objectives, each

6  with its own distinct fee schedule, etc. — they are not, as Plaintiffs would have it, just a

7  single, undifferentiated mass.  The statutory provision establishing the right of action for a

8  security holder to challenge advisory or distribution compensation, § 36(b) of the

9  Investment Company Act, necessitates Fund-specific factual allegations:

10          An action may be brought under this subsection [§ 36(b)] by
            the Commission, or by a security holder of <u>such</u> registered
11          investment company on behalf of <u>such</u> company … for breach
            of fiduciary duty in respect of <u>such</u> compensation or payments
12          paid by <u>such</u> registered investment company …. (Emphasis
            supplied.)

13      The singularity and focused nature of this statutory language, when coupled with

14  the teaching of *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 327 (4th Cir.

15  2001), and *Krantz v. Prudential Inv. Fund Mgmt. LLC*, 305 F.3d 140 (3d Cir. 2002), *cert.*

16  *denied*, 537 U.S. 1113 (2003), as to pleading the substantive content of a § 36(b) claim,

17  compel this Court, we respectfully submit, to dismiss the § 36(b) claims in this case for

18  failure to state a legally cognizable claim.  As the restrictive language of § 36(b) makes

19  clear, Congress never envisioned, and this Court should not permit, this type of

20  agglomerated, mega-case based on irrelevant generalizations about the Fund Complex

21  (which offers in excess of 100 distinct Funds) or the mutual fund industry as a whole.  The

22  statute authorizes only a case by a security holder of a <u>particular</u> Fund based on the facts

23  specific to <u>that</u> security holder's <u>particular</u> Fund.

24      To illustrate:  Susan Strigliabotti, the first-named plaintiff, alleges that she owns

25  shares in Franklin Flex Cap Growth Fund (*see* Complaint, ¶ 30).  **And that is the sum**

26  **total of her specific allegations about Franklin Flex Cap Growth Fund in the**

27  **Complaint.**  There is not so much as a single factual allegation in the Complaint about the

28

1   relationship between the fees charged to that Fund (*i.e.*, the **Franklin Flex Cap Growth**

2   **Fund**) and the services provided to that Fund (*i.e.*, the **Franklin Flex Cap Growth**

3   **Fund**).  The same is true, with immaterial exceptions, as to the claims of each and every

4   other one of the plaintiffs and each and every other one of the Funds crammed into this

5   Complaint.  The Court may search the Complaint in vain for <u>Fund-specific factual</u>

6   <u>allegations</u> that support a § 36(b) claim as to any one of the eight Funds on whose behalf

7   any one of the nine plaintiffs purports to sue:  there is none.

8       Plaintiffs resort to generalities about the Franklin Fund Complex, the parent

9   company, or the mutual fund industry in general which, even if proved, would not show

10  excessive fees charged to any one of these eight Funds.  As a paradigm example of these

11  insufficient generalities, the Court's attention is respectfully directed to paragraph 60 of

12  the Complaint:

13          60.  As noted above, since 1971, the assets
        managed by Defendants within the Fund Complex have
14      grown dramatically.  So have revenues, net income and profit
        margins.  Over that period, the immense growth of assets
15      under management has generated substantial economies of
        scale to the great benefit of the Defendant Advisors and the
16      Distributor and their parent company, Defendant Franklin
        Resources.  Franklin Resources' stock price has reflected
17      the tremendous economies and profits achieved by the
        management company, largely at fund shareholders' expense.
18      Franklin Resources' stock appreciated 1,900-fold since the
        company went public in 1971, far outpacing the 11-fold rise
19      in the Dow Jones Industrial Average during the same period.
        Moreover, as noted above, Franklin Resources has not only
20      experienced explosive growth in revenues and profits over the
        last 20+ years, its profit margin has likewise soared because
21      of its ability to appropriate for itself economies of scale that
        properly belong to Plaintiffs and the other shareholders of
22      Franklin Resources' funds.

23

24      This type of generalized attack on the Franklin Fund Complex is legally irrelevant

25  for purposes of § 36(b):  allegations that assets under management, complex-wide, grew

26  over a 20+ year period, and that the stock price of Franklin Resources, the parent

27  company, has appreciated 1900-fold in 34 years, either taken individually or together, and

28  whether true or false, are utterly insufficient under the statute and the case law to

1   constitute a legally cognizable § 36(b) excessive fee case as to the **Franklin Flex Cap**

2   **Growth Fund**.  In short, there are absolutely no facts pleaded from which this Court

3   could possibly conclude that the fees charged to this particular Fund, the **Franklin Flex**

4   **Cap Growth Fund**, were excessive in relation to the services rendered to this particular

5   Fund, the **Franklin Flex Cap Growth Fund**, in the relevant statutory period (*i.e.*, one

6   year prior to filing of the Complaint).  *See* § 36(b)(3).

7          The total lack of factual support for a § 36(b) claim by Ms. Strigliabotti as to the

8   **Franklin Flex Cap Growth Fund** is repeated in the case of each and every other plaintiff

9   and each and every other Fund in this action.  There simply are no factual allegations

10  which, if proved, would support the proposition that any particular Fund identified in the

11  Complaint was charged fees disproportionate to the services rendered to that particular

12  Fund.

13         All allegations in the Complaint, with immaterial exceptions,[2] are about the Fund

14  Complex or the parent company — none is Fund-specific.  Precisely these types of

15  complex-wide generalities were alleged and explicitly rejected in *Migdal*:

16         what the Plaintiffs said in *Migdal* —

17               Paragraph 31 of *Migdal* Second Amended Complaint:

18               [D]efendant T. Rowe Price had a banner year in 1998, with
                revenues of $886 million, a $131 million increase over 1997

19

---

20  [2]  The allegation that the Templeton Growth Fund is charged fees higher than those charged
     institutional clients (Complaint, para. 71 B. at p. 25) does not plead a legally cognizable § 36(b)
21   claim for that Fund (to say nothing of the other seven Funds in this action), as the Complaint
     nowhere attempts to relate the fees paid by the Templeton Growth Fund to the specific services
22   rendered to that Fund.  The mere fact that certain institutional clients pay lower fees than a
     mutual fund is legally irrelevant:  it compares apples and oranges.  *See, e.g., Gartenberg v.*
23   *Merrill Lynch Asset Management, Inc.*, 694 F.2d 923, 930, n.3 (2d Cir. 1982):

24               Appellants' argument that the lower fees charged by investment
                advisers to large pension funds should be used as a criterion for
25               determining fair advisory fees for money market funds must also be
                rejected.  The nature and extent of the services required by each
26               type of fund differ sharply.  As the district court recognized, the
                pension fund does not face the myriad of daily purchases and
27               redemptions throughout the nation which must be handled by the
                Fund, in which a purchaser may invest for only a few days.

28  *Accord, Strougo v. BEA Associates*, 188 F. Supp. 2d 373, 384 (S.D.N.Y. 2002).

revenues.  Earnings in 1998 grew 20% over 1997 earnings.
Assets under management in the T. Rowe Complex swelled to
$94.4 billion.  In 1998, net cash inflows to the Funds was $3.7
billion.  Despite these huge increases for T. Rowe Price … the
"outside directors" have continually permitted defendants to
charge excessive advisory fees.

what the District Court said in *Migdal* —

No. AMD 98-2162, 2000 WL 350400 at *3 (D. Md. March
20, 2000), *aff'd*, 248 F.3d 321 (4th Cir. 2001):

As to the "direct" violation [of § 36(b)], plaintiffs allege,
*inter alia*, the following … (4) that defendants' earnings
increased by more than 20%.  I am constrained to reject these
allegations of "circumstantial" indicia of excessiveness as
legally insufficient … because the level of generality remains
too high and (more importantly) because these allegations do
not remotely touch on the issue of what, if any, *relation* exists
between the disputed fees on the one hand, and the services
provided in consideration for their payment, on the other hand.
*See Gartenberg*, 694 F.2d at 928. (Emphasis supplied.)

## 2.    Response to Plaintiffs' Anticipated Points

Since the foregoing analysis was tendered by us in the Southern District of Texas,

and the same Plaintiffs' counsel, Messrs. Keller Rohrback, responded, we can reasonably

anticipate their answering arguments here, and address them briefly below.

1.    Plaintiffs place reliance on the few recent District Court Opinions

that have sustained § 36(b) Complaints (*Gallus*, *Jones*, *Wicks* and *Miller*[3]).  Those

Opinions, however, do not involve or grapple with the unique and critical point we are

raising on this motion.  No party, in any of those four cases, raised the point made here:

*i.e.*, the requirement of Fund-specific facts in a § 36(b) claim (*i.e.*, "each tub on its own

bottom").

2.    Further, contrary to Plaintiffs' protestations, this motion is not

about Rule 8(a).  This motion addresses the substantive requirements necessary to plead

---

[3]  *But cf.* numerous recent decisions dismissing § 36(b) claims:  *In re Eaton Vance Mutual Funds
Fee Litig.*, 380 F. Supp. 2d 222, 237-8 (S.D.N.Y. 2005); *Benak v. Alliance Capital
Management L.P.*, No. 01-5734, 2004 U.S. Dist. LEXIS 12231 (D.N.J. Feb. 9, 2004);
*Yampolsky v. Morgan Stanley Investment Advisers Inc.*, No. 03 Civ. 5710 (RO), 03 Civ. 5896
(RO) 2004 WL 1065533 (S.D.N.Y. May 12, 2004).

1   facts sufficient to state a legally cognizable claim.  Rule 8(a) does not eliminate

2   Rule 12(b)(6) from the Federal Rules of Civil Procedure, as *Migdal* well recognized.

3   Defendants are <u>not</u>, contrary to Plaintiffs' assertion, advocating or relying on an

4   "enhanced" pleading standard— nor did *Migdal* or *Krantz* involve any such standard.

5   Defendants, instead, point out to this Court (to use one plaintiff as an example) that

6   Ms. Strigliabotti has not pleaded <u>any</u> facts about the services rendered to <u>her</u> Fund or why

7   the fees charged to <u>her</u> Fund are disproportionate to the services rendered to <u>her</u> Fund.

8   We anticipate that Plaintiffs will simply sidestep the core point of this motion.

9           3.      Plaintiffs have also relied on *Swierkiewicz v. Sorema, N.A.*, 534 U.S.

10  506, 514 (2002) (Quoting F.R.Civ. P. 8(a)), for the unremarkable proposition that "a

11  complaint need only contain 'a short and plain statement of the claim showing that the

12  pleader is entitled to relief.'"  That assertion merely reiterates the language of Rule 8(a); it

13  provides no insight into its meaning or its interplay with Rule 12(b)(6).[4]

14          The Fourth Circuit in *Migdal* was well aware of Rule 8(a) — in fact, it

15  quoted and discussed Rule 8(a), but it also correctly saw and understood the interplay

16  between Rule 8(a) and Rule 12(b)(6):

17              Rule 8(a)(2) requires only a "short and plain statement of the
                claim showing that the pleader is entitled to relief." Fed. R.
18              Civ. P. 8(a)(2).

19              Rule 12(b)(6), however, is not without meaning. "The
                presence of a few conclusory legal terms does not insulate a
20              complaint from dismissal under Rule 12(b)(6) when the facts
                alleged in the complaint" cannot support the legal conclusion
21              (248 F.3d at 326).

22          Thus, *Swierkiewicz* and *Migdal* are not in conflict, but rather are entirely

23  consistent on the operation of Rule 8(a).[5]

---

24  [4]  For recent Supreme Court commentary on the limits of Rule 8(a) and *Swierkiewicz*, see *Dura*

25  *Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 2005 U.S. LEXIS 3478 at *20 (April 19,
    2005).

26  [5]  This Court previously dismissed Franklin Resources, Inc. and Franklin Templeton Services
    from this action on the ground that the Complaint did not allege that they were "recipients" of
27  compensation within the requirements of § 36(b).  Plaintiffs have failed to cure this defect in
    the Third Amended Complaint.  Accordingly, in any and all events, the § 36(b) claims as
28  against Franklin Resources and Franklin Templeton Services should be dismissed.

1    **B.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL**
      **JURISDICTION OVER THE STATE LAW CLAIMS**

2

3         Since Plaintiffs' federal law claims (Counts I-III) must be dismissed for the reasons

4    set forth in Section A, this Court should decline to exercise supplemental jurisdiction over

5    Plaintiffs' state law claims (Counts IV-IX). *Bryant v. Adventist Health System/West*, 289

6    F.3d 1162, 1169 (9th Cir. 2002); *Lappin v. Laidlaw Transit Inc.*, 179 F. Supp. 2d 1111,

7    1127 (N.D. Cal. 2001).

8         If the Court accepts the foregoing analysis, it need not proceed to Section C.

9    **C.    IN ANY EVENT, EVEN IF A FEDERAL CLAIM IS SUSTAINED, THE**
      **STATE LAW-BASED CLASS ACTION CLAIMS MUST BE DISMISSED**
10    **AS PREEMPTED BY SLUSA**

11        Counsel for Plaintiffs represented to this Court, on the initial Motion to Dismiss,

12   that they were not bringing class action claims. Despite this representation they have now

13   included state law-based class action claims in the Complaint. Accordingly, the Securities

14   Litigation Uniform Standards Act ("SLUSA") is now clearly pertinent.

15        SLUSA, enacted in 1998, was designed by Congress to prevent state law-based

16   class action claims that evaded the protections provided by Congress in the Private

17   Litigation Securities Reform Act, enacted in 1995. Thus, SLUSA preempts all state law-

18   based class action claims that meet four criteria.

19        SLUSA requires dismissal of state law-based class action claims when "(1) the case

20   is a 'covered class action,' (2) based on state law, (3) that alleges an 'untrue statement or

21   omission of material fact in connection with the purchase or sale,' (4) of a 'covered

22   security.'" 15 U.S.C. §§ 77p(b) and 78bb(f)(1); *Patenaude v. Equitable Life Assurance*

23   *Society of the United States*, 290 F.3d 1020, 1025 (9th Cir. 2002); *Falkowski v. Imation*

24   *Corp.*, 309 F.3d 1123, 1128 (9th Cir. 2002).

25        This action meets all four criteria for SLUSA preemption. First, this action is a

26   "covered class action" since it involves more than 50 shareholders (Complaint ¶ 46).

27   Second, the claims (Counts IV-IX) are based on state law. Third, defendants are alleged

28   to have "omitted or misrepresented material facts in connection with the purchases or

1    sales" of covered securities (Complaint ¶¶ 73, 93, 98, 111, 119, 121 and 122).[6]  Fourth,

2    the claims involve "covered securities," *i.e.*, shares of mutual funds.

3         Under these circumstances, SLUSA preempts the state law-based class action

4    claims and compels their dismissal.

5         The fact that the class definition includes "shareholders" ("The class consists of all

6    residents of the state of California who were shareholders in the Templeton Growth Fund,

7    the Franklin Balance Sheet Investment Fund and/or the Franklin Flex Cap Growth

8    Fund ....") (Complaint ¶¶ 40, 45), does not exempt the state law-based class action claims

9    from the reach of SLUSA.  Such a class, in mutual fund cases, has repeatedly been held to

10   include purchasers and sellers as well as holders of securities, thus requiring dismissal of

11   the state law-based class action claims under SLUSA.  *See, e.g., Disher v. Citigroup*

12   *Global Markets, Inc.*, 2005 U.S. App. LEXIS 17334 at *15-17 (7th Cir. Aug. 17, 2005);

13   *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (7th Cir. 2005); *Rowinski v. Salomon*

14   *Smith Barney Inc.*, 398 F.3d 294, 300 and 303 (3d Cir. 2005); *Dabit v. Merrill Lynch,*

15   *Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 47 (2d Cir. 2005); *Atencio v. Smith Barney*,

16   2005 WL 267556 at **5-6 (S.D.N.Y. Feb. 2, 2005); *In re Lord Abbett Mutual Funds Fee*

17   *Litig.*, ___ F. Supp. 2d ____, 2005 WL 2090517 at *12 (D.N.J. Aug. 30, 2005); *In re*

18   *Franklin Mutual Funds Fee Litig.*, ___ F. Supp. 2d ____, 2005 WL 2175950 at **17-19

19   (D.N.J. Sept. 9, 2005); *In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 241-

20   242 (S.D.N.Y. 2005).

21        Plaintiff Strigliabotti's disavowal of any claim based on a misrepresentation or

22   omission in connection with the purchase or sale of a covered security (Complaint ¶ 119)

23   is not dispositive.  The Court may look behind the disclaimer in the pleading to the

24   "essence of a complaint," as did Judge Martini several weeks ago in *In re Franklin Mutual*

25   *Funds*, 2005 WL 2175950 at *18.  Judge Martini there held:[7]

26   _____

27   [6] See Addendum A for the text of the alleged omissions and misrepresentations.

28   [7] Judge Martini's Opinion (involving Franklin) is helpful on SLUSA preemption and that portion
     of his Opinion is annexed hereto as Addendum B.

NOTICE OF MOTION AND MOTION TO DISMISS;
POINTS AND AUTHORITIES IN SUPPORT
CASE NO. C-04-0883-SI

1  Although plaintiffs' class definition scrupulously refers
   only to "holders," it is drawn broadly enough, like the class
2  definition in *Rowinski*, to include any investor who purchased
   shares of the defendant funds between 1999 and 2003 and
3  thereby became holders.

4     In sum, the state law-based class action claims of the purported class satisfy each

5  of the requirements for preemption by SLUSA and therefore must be dismissed.

6

7                                    **III.**

8                                **CONCLUSION**

9     The Third Amended Complaint should be dismissed.

10

11 Dated:  September 29, 2005                POLLACK & KAMINSKY

12
                                           By:    /s/ Daniel A. Pollack
13                                                Daniel A. Pollack *(pro hac vice)*
                                                 Edward T. McDermott *(pro hac*
14                                               *vice)*
                                                 Anthony Zaccaria *(pro hac vice)*
15

16                                         O'MELVENY & MYERS LLP

17
                                           By:    /s/ Meredith N. Landy
18                                                Meredith N. Landy
                                                 Dale M. Edmondson
19
                                           Attorneys for Defendants
20                                         FRANKLIN RESOURCES, INC., et al.

21

22

23

24

25

26

27

28

*ADDENDUM A*

**Addendum A**

Cplt. ¶

73 — "The soft dollar arrangement/fallout benefits are concealed from the shareholders of the Funds in breach of Defendants' fiduciary duty.")

93 — Defendants "represented that the distribution fees were being collected in order to, at least in part, grow the assets of the Funds in order to reduce the cost to plaintiffs and the shareholders of the Funds of providing advisory services."

98 — "The wrongful rebates and other payments represent undisclosed discriminatory diversions of fund assets in breach of Defendants' fiduciary duties. To the extent that the payments constitute reductions in prices to affected fund purchasers, they constitute illegal sales in violation of section 22 of the Investment Company Act since they represent sales at prices or under terms not disclosed in the prospectus."

111 — "Franklin Resources' wrongful aiding and abetting occurred because it knowingly and consciously substantially assisted and caused those violations by various wrongful acts, including, but not limited to, withholding material information (such as the availability of other advisors to render advisory services at substantially lower prices) . . ."

119 — "Plaintiffs' claims are rooted in violations by Class Defendants of duties they owed Plaintiffs by reason of their fiduciary positions, including the duty to convey important information to Plaintiffs in an accurate and honest manner."

121 — "Documents circulated by class Defendants are unfair and misleading in that they represent implicitly or expressly that the fees charged by or on behalf of Class Defendants are fair and proper when they are exorbitant and excessive. In effect, Class Defendants have masked the true extent of the fees they charge, thereby lulling investors into a false sense of security that they are trustworthy fiduciaries, when in fact they are exploiting the Plaintiffs' trust."

122 — "The unlawful, unfair and fraudulent business acts and practices, and unfair, deceptive, untrue and misleading advertising alleged above have resulted in overcharges being made that have directly caused a distinct and palpable injury to the Plaintiffs and other investors in the Strigliabotti Funds, in part because each overcharge directly caused a dollar-for-dollar decrease in the value of their investment in the Strigliabotti Funds."

*ADDENDUM B*

defendants are correct and that Count Six fails to state a viable claim under the New Jersey
Consumer Fraud Act. (Pls.' Opp'n Br. at 36 n.26). Thus, Count Six must be dismissed.

## IX.    Plaintiffs' Remaining State Law Claims

Plaintiffs' Counts Seven through Ten allege state law claims of breach of fiduciary duty
against the investment adviser defendants and director defendants, aiding and abetting the breach
of fiduciary duty against all defendants, and unjust enrichment against all defendants. As
discussed above, because plaintiffs pleaded these claims as direct claims when they are in fact
derivative claims, they must be dismissed. Moreover, even assuming *arguendo* that plaintiffs'
claims are properly pleaded as direct claims, they still must be dismissed, only this time as
preempted under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"),
specifically 15 U.S.C. § 78bb(f).

SLUSA mandates preemption when the complaint alleges: (1) a "covered class action"
(2) based on state law claims concerning (3) the purchase or sale of a "covered security" and (4)
the defendant misrepresented or omitted a material fact "in connection with" the purchase or sale
of such security. 15 U.S.C. § 78bb(f)(1). Plaintiffs do not dispute that Counts Seven through
Ten satisfy the first three elements of the SLUSA preemption test. The putative class size
exceeds fifty shareholders, constituting a "covered class action." *See* 15 U.S.C. § 78bb(f)(5)(B);
*Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 298 n.4 (3d Cir. 2005). The Counts
allege state law claims. And mutual fund shares are "covered securities." *See* 15 U.S.C. §
78bb(f)(5)(E); *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 481 (7th Cir. 2005).

Rather, plaintiffs dispute that the allegations in Counts Seven through Ten satisfy the fourth prong of the SLUSA test – whether plaintiffs' state law claims arise "in connection with the purchase or sale" of securities. Plaintiffs contend that their claims do not meet the fourth prong because they "are asserted only on behalf of persons in their capacity as *holders*, not as purchasers or sellers." (Pls.' Opp'n Br. at 36, emphasis in original). Plaintiffs' position, however, is untenable given the Third Circuit's construction of the "in connection with" language of SLUSA.

Recently, in *Rowinski v. Salomon Smith Barney*, 398 F.3d 294 (3d Cir. 2005), the Third Circuit broadly construed the phrase "in connection with." In doing so, it formulated a flexible test for determining whether a scheme is "in connection with" the purchase or sale of securities:

> [F]irst, whether the covered class action alleges a "fraudulent scheme" that "coincides" with the purchase or sale of securities[;] second, whether the complaint alleges a material misrepresentation or omission "disseminated to the public in a medium upon which a reasonable investor would rely[;]" third, whether the nature of the parties' relationship is such that it necessarily involves the purchase or sale of securities[;] . . . fourth, whether the prayer for relief "connects" the state law claims to the purchase or sale of securities[; and fifth, any other considerations that may be relevant.]

*Id.* at 302 (citations omitted).

To better understand this test and its application to the facts before the Court, it is worth examining *Rowinski* in greater detail. In that case, plaintiff asserted state law claims on behalf of others similarly situated alleging that Salomon Smith Barney violated state laws by disseminating biased research that favored the firm's investment banking clients and injured its retail brokerage customers. In his prayer for relief, Rowinski sought damages in the amount of any and all fees

33

and charges imposed by Salomon Smith Barney, and all compensatory damages. Plaintiff argued that the "in connection with" element of SLUSA preemption was not met. The Third Circuit disagreed, finding that plaintiff's claims were preempted.

First, the court found that the complaint alleged a fraudulent scheme that coincided with the purchase or sale of securities. The very essence of that scheme required that investors purchase the misrepresented securities. The court recognized that "[a]bsent purchases by 'duped' investors and a corresponding inflation in the share price, Salomon Smith Barney's biased analysis would fail to benefit its banking clients and, in turn, would fail to yield hundreds of millions of dollars in investment banking fees." *Id.* at 302. Second, the court found that Salomon Smith Barney made material misrepresentations regarding the value of securities in investment research reports, a medium the investing public could reasonably rely upon. Third, the court found that the nature of the relationship between the parties – the broker/investor relationship – exists for the very purpose of trading in securities. In that case, where the class claims alleged misleading investment advice, the court found that such a relationship will almost certainly involve "purchasers" and "sellers" of securities. *Id.* at 303. And fourth, the court found that the recovery sought by plaintiff, which included trading fees and commissions, encompassed "charges incurred only in connection with the purchase or sale of securities." *Id.* In light of those findings, the Third Circuit found that Rowinski's state law class claims were preempted by SLUSA.

After examining this case under *Rowinski*'s flexible test, the Court concludes that plaintiffs' state law claims satisfy the "in connection with" requirement. Plaintiffs' state law claims allege that defendants engaged in a fraudulent scheme, the purpose of which was to push

34

investors into mutual funds in order to increase fees and other charges, thereby injuring shareholders. As in *Rowinski*, the only way for this scheme to succeed was for investors to purchase securities (shares of the defendant mutual funds). Thus, defendants' fraudulent scheme necessarily "coincided" with the purchase of securities.

Moreover, there is little doubt that the Counts are based, in part, on material misrepresentations and/or omissions conveyed to the public in the funds' prospectuses, which, like the investment research reports in *Rowinski*, a reasonable investor would rely upon. After all, plaintiffs contend that the prospectuses' failure to disclose information regarding the funds' revenue sharing, directed brokerage, 12b-1 fees and soft dollars affected investors when they were deciding whether to invest in the funds. (*See* Compl. ¶¶ 101-10). Further, because the allegedly fraudulent shelf-space scheme depended upon brokers "duping" investors to buy the defendant funds, as in *Rowinski*, this scheme included relationships involving the trading of securities.

And finally, the recovery plaintiffs seek here clearly "connects" the state law claims to the purchase of securities. Plaintiffs seek recovery of compensatory damages for all damages sustained as a result of defendants' wrongdoing and, among other things, recovery of all unlawfully obtained fees and charges. (*See* Compl. p. 57). As alleged, the fees and charges imposed on the funds either precipitated and/or perpetuated the shelf-space arrangements. Thus, as in *Rowinski*, the fees, charges and compensatory damages sought encompass charges incurred in connection with the purchase of securities.

Plaintiffs argue that their state law claims do not satisfy the "in connection with" requirement because the Complaint, as drafted, only focuses on claims of "holders," not

35

purchasers or sellers. Plaintiffs, however, are incorrect. It is well-established that an artfully

drafted complaint cannot circumvent SLUSA preemption. *See, e.g., Dabit v. Merrill Lynch,*

*Pierce, Fenner & Smith, Inc.,* 395 F.3d 25, 33-34 (2d Cir. 2005). Rather, a court is required to

look at the essence of a complaint. *Id.* at 34; *Dudek v. Prudential Sec., Inc.,* 295 F.3d 875, 879

(8th Cir. 2002).

In *Rowinski,* the plaintiff made the same argument. There, the plaintiff attempted to

distinguish his case by arguing that the dissemination of misleading investment advice did not

concern purchasers and sellers, but rather was limited to "holders" of the recommended

securities. *Rowinski,* 398 F.3d at 303. The Third Circuit rejected this argument in light of the

plaintiff's class definition: "All persons who maintained a Salomon Smith Barney retail

brokerage account and who paid any charges[,] commissions or fees to Salomon Smith Barney."

*Id.* According to the Third Circuit, "[t]his broad class definition is not limited to non-purchasers

and non-sellers, and it necessarily encompasses claims by Salomon Smith Barney retail

brokerage customers who purchased or sold the misrepresented securities." *Id.* Here, plaintiffs'

argument fails for the same reason. Although plaintiffs' class definition scrupulously refers only

to "holders," it is drawn broadly enough, like the class definition in *Rowinski,* to include any

investor who purchased shares of the defendant funds between 1999 and 2003 and thereby

became holders.[14]

In short, plaintiffs' state law claims are preempted by SLUSA. *See Atencio v. Smith*

*Barney, Citigroup Inc.,* No. 04-5653, 2005 WL 267556 (S.D.N.Y. Feb. 2, 2005) (concluding that

---

[14]The Complaint defines the class as "all persons or entities who held one or more shares
of Franklin Funds . . . during the period March 2, 1999 to November 17, 2003." (Compl. ¶ 1; *see
also* Compl. ¶ 111).

36

state law claims for breach of fiduciary duty and unjust enrichment resulting from a kickback scheme between mutual fund groups and defendant brokers were preempted by SLUSA because the class definition necessarily included holders who had purchased shares during the class period); *Kircher v. Putnam Funds Trust*, 403 F.3d 478 , 484 (7th Cir. 2005); *Dabit*, 395 F.3d at 47. Thus, Counts Seven though Ten must be dismissed.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss the Complaint is granted; Counts One, Two and Six are dismissed with prejudice; and Counts Three through Five and Seven through Ten are dismissed without prejudice. Plaintiffs are granted leave to amend their Complaint in accordance with this Opinion. In any event, because plaintiffs' Complaint alleges only derivative claims, plaintiffs' Motion for Class Certification and Motion for Leave to File a Supplemental Reply Brief in Support of Its Motion for Class Certification are denied.

September 9, 2005

s/ William J. Martini
**William J. Martini, U.S.D.J.**