United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN STRIGLIABOTTI, et al.,<br><br>    Plaintiffs,<br>  v.<br><br>FRANKLIN RESOURCES, INC., et al.,<br><br>    Defendants.               / | No. C 04-00883 SI<br><br>**ORDER PARTIALLY GRANTING AND PARTIALLY DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

On November 4, 2005, the Court heard oral argument on defendants' motion to dismiss, which was re-noticed as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). After careful consideration of the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant's motion to the extent it seeks dismissal of defendant Franklin Templeton Services with respect to plaintiffs' claims under Section 36(b) of the Investment Company Act, and DENIES the remainder of defendant's motion.

## BACKGROUND

**1.    Factual background**

This action is brought by shareholders of several mutual funds ("Funds") created, sold, advised, and managed as part of the Franklin Templeton fund family ("the Fund Complex"). Specifically, the Funds are Templeton Growth Fund, Franklin Balance Sheet Investment Fund, Franklin Flex Cap Growth Fund, Franklin Income Fund, Franklin Small-Mid Cap Growth Fund, Franklin Biotechnology Discovery Fund, MutualShares

Fund, and Franklin Utilities Fund. Third Am. Compl. ("Compl.") at ¶ 1.[1] Plaintiffs are nine individuals who bring suit both in their own rights and for the use and benefit of the aforementioned funds. *Id.* Plaintiff Susan Strigliabotti also brings this case on behalf of a class consisting of all residents of the State of California who were shareholders of the Templeton Growth Fund, the Franklin Balance Sheet Investment Fund, and/or the Franklin Flex Cap Growth Funds at any time from March 4, 2000 to the present. *Id.* at ¶ 45.[2]

Defendants are Franklin Resources, Inc., Templeton Global Advisors, Ltd., Franklin Advisory Services, LLC, Franklin Advisers, Inc., Franklin Templeton Distributors, Inc., Franklin Mutual Advisers, LLC, and Franklin Templeton Services, LLC. *Id.* at ¶ 2. They are various investment advisors affiliated with a single parent company, also a defendant, Franklin Resources, Inc. ("Franklin Resources"), a publicly traded company incorporated in Delaware and headquartered in San Mateo, California. *Id.*

Plaintiffs allege that defendants receive advisory fees from the Funds for investment advisory services and administrative services, and these fees are based on a percentage of the net assets of each of the Funds. *Id.* at ¶ 6. Defendants also charge distribution fees for marketing, selling, and distributing mutual fund shares to new shareholders under "Distribution Plans" adopted pursuant to Rule 12b-1, 17 C.F.R. § 270.12b-1. *Id.* at ¶ 9. These distribution fees are based on a percentage of the net assets of each of the funds in the Fund Complex and amount to more than $7 million annually. *Id.* Plaintiffs allege that the advisory fees charged by defendants are higher than those for other funds for which defendants perform equivalent services, and that the distribution fees are excessive, in violation of Rule 12b-1 and § 36(b) of the Investment Company Act of 1940. Plaintiffs specifically claim that, despite significant growth in the Funds since 1983, they have not benefitted from the economies of scale and instead have been charged advisory and distribution fees that are disproportionately large in relation to the services provided. *Id.* at ¶¶ 13-15.

Plaintiffs seek to either rescind the investment advisory agreements and Distribution Plans and recover

---

[1] On March 4, 2004, plaintiffs filed this action on behalf of five funds; they amended the complaint on June 3, 2004, adding Franklin Income Fund, Franklin Small-Mid Cap Growth Fund, Franklin Biotechnology Discovery Fund, Mutual Shares Fund, and Franklin Utilities Fund as plaintiffs, and adding as defendants Franklin Mutual Advisers, LLC, and Franklin Templeton Services, LLC.

[2] Plaintiffs added the class allegations to the Third Amended Complaint. This order does not address whether plaintiffs' state law claims should be certified, and the Court will resolve that issue in connection with plaintiffs' motion for class certification, currently scheduled for argument in January 2006.

2

the total fees charged by defendants, or, in the alternative, to recover the excess profits resulting from economies of scale wrongfully retained by defendants, and any other excessive compensation or improper payments received and retained by defendants in breach of their fiduciary duty under § 36(b), 15 U.S.C. § 80a-35(b), and state law. *Id.* at ¶ 28. The Third Amended Complaint alleges individual and derivative claims for: (Count I) breach of fiduciary duty under § 36(b) for excessive investment advisory fees; (Count II) breach of fiduciary duty under § 36(b) for excess profits from economies of scale; and (Count III) breach of fiduciary duty under § 36(b) for excessive Rule 12b-1 distribution fees and extraction of additional compensation for advisory services. The Complaint also alleges individual, derivative, and class claims for: (Count IV) breach of fiduciary duty under California law; (Count V) civil conspiracy to breach fiduciary duty under California law; (Count VI) common law aiding and abetting breaches of fiduciary duty by Franklin Resources; (Count VII) "acting in concert" under § 876(b) of the Restatement (Second) of Torts; (Count VIII) breach of Cal. Business & Professions Code § 17200; and (Count IX) common law unjust enrichment.

### 2. Procedural background

Plaintiffs filed their complaint on March 4, 2004, and filed a First Amended Complaint on June 3, 2004. Defendants filed a motion to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In that motion to dismiss, defendants contended, *inter alia*, that plaintiffs' claims in Counts I, II, and III under Section 36(b) of the Investment Company Act of 1940 were deficient because the complaint contained vague allegations that did not sufficiently detail the excessiveness of fees charged in relation to services provided. In an order filed March 7, 2005, the Court rejected that argument and held that plaintiffs had sufficiently pled their claims under Section 36(b). The Court also dismissed certain claims without leave to amend and dismissed other claims with leave to amend.

Plaintiffs filed a Second Amended Complaint on March 21, 2005. That complaint made a few substantive changes in response to the Court's March 7, 2005 order. Defendants filed an answer to the Second Amended Complaint on April 11, 2005. Pursuant to a stipulated order by the Court, plaintiffs filed a Third Amended Complaint on August 17, 2005. The Third Amended Complaint is identical to the Second Amended Complaint except for the addition of class action allegations based on California law (Counts IV

through IX), and the deletion of claims related to two funds.

On September 29, 2005, defendants filed a motion to dismiss the Third Amended Complaint pursuant to Rule 12(b)(6). After plaintiffs filed their opposition to the motion to dismiss, in which they argue, *inter alia*, that the motion to dismiss is procedurally improper, defendants filed an answer to the Third Amended Complaint on October 20, 2005. Defendants also re-noticed their Rule 12(b)(6) motion as an alternative motion for judgment on the pleadings pursuant to Rule 12(c).

Defendants' instant motion contends that plaintiffs' Section 36(b) claims must be dismissed because plaintiffs have failed to plead any facts that the fees charged to any *particular* fund were excessive in relation to any *particular* fund. Defendants also contend that plaintiffs' newly asserted California class claims must be dismissed either for lack of jurisdiction (assuming dismissal of the federal claims), or dismissed because they are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). Plaintiffs oppose defendants' motion on the grounds that it is an improper "second bite at the apple" in violation of Rule 12 and barred by the law of the case. On the merits, plaintiffs contend they have adequately pled claims under Section 36(b), and that their state law claims are not preempted by SLUSA.

## LEGAL STANDARD

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). Rules 12(b)(6) and 12(c) are substantially identical. *See* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, Federal Civil Procedure Before Trial § 9:319. Under either provision, a court must determine whether the facts alleged in the complaint, to be taken for these purposes as true, entitle the plaintiff to a legal remedy. *Id.* If the complaint fails to articulate a legally sufficient claim, the complaint should be dismissed or judgment granted on the pleadings.

While Rule 12(c) of the Federal Rules of Civil Procedure does not expressly provide for partial judgment on the pleadings, neither does it bar such a procedure; it is common to apply Rule 12(c) to individual causes of action. *Moran v. Peralta Community College Dist*., 825 F.Supp. 891, 893 (N.D. Cal. 1993); Schwarzer et al., § 9:340 (1997) (common practice to permit "partial judgment on the pleadings").

4

# DISCUSSION

**1. Section 36(b) claims**

Plaintiffs bring Counts I, II, and III under Section 36(b) of the Investment Company Act of 1940. Defendants' motion attacks these claims on the ground that plaintiffs have failed to plead any specific facts that the fees charged for each of the eight funds at issue are excessive. Instead, defendants contend, the Complaint simply contains a generalized attack on the Franklin Fund Complex, and that even if plaintiffs' allegations were true, they would not prove that the fees charged to any particular fund were excessive under Section 36(b). Defendants also contend that defendants Franklin Resources and Franklin Templeton should be dismissed with prejudice because the Third Amended Complaint still does not allege that these defendants were "recipients" of compensation or payments as required by Section 36(b).

**A. Sufficiency of allegations for Section 36(b) claims**

The parties dispute the propriety of defendants' second motion under Rule 12(b)(6) given the fact that defendants answered plaintiffs' Second Amended Complaint. In an effort to avoid plaintiffs' argument that the motion is procedurally improper, defendants have also filed an answer to the Third Amended Complaint and re-noticed the motion as an alternative motion for judgment on the pleadings under Rule 12(c), which can be filed any time after an answer is filed. Thus, although plaintiffs are correct that defendants' motion is not properly filed pursuant to Rule 12(b)(6), defendants may pursue their motion under Rule 12(c).

Plaintiffs also contend that defendants' challenges to their Section 36(b) claims are foreclosed by the law of the case. The Court agrees. Defendants acknowledge that their present arguments regarding plaintiffs' Section 36(b) claims are a "refined" version of their earlier arguments. Defendants' Second Motion to Dismiss at 1. A comparison of the first motion to dismiss with the current motion shows that both motions rely on the same case law and advance the same general attack on plaintiffs' Section 36(b) claims. For example, defendants' first motion contended that the Section 36(b) claims were deficient because "[p]laintiffs simply name a number of Funds on whose behalf they claim to be proceeding, and list a series of defendants they claim received 'excessive or inappropriate compensation.'" Defendants' First Motion to Dismiss at 2. Defendants further contended that "plaintiffs ask the Court to assume that whatever services any defendant rendered to any

1  Fund, of <u>whatever</u> nature or quality, producing <u>whatever</u> results, under <u>whatever</u> circumstances, must have been
2  worth less than the Fund paid, <u>whatever</u> that amount may have been." *Id.* at 3 (emphasis in original).

3  Defendants' instant challenge to plaintiffs' Section 36(b) claims is essentially the same, but with a
4  different emphasis. Whereas defendants previously argued that the complaint lacked specific allegations
5  regarding the excessiveness of fees in relation to services provided, defendants' current arguments focus on the
6  lack of such specific allegations for each fund. The fact that defense counsel believes that the previous motion
7  to dismiss was erroneously decided, and erroneously presented by his co-counsel,[3] is not a persuasive reason
8  for the Court to exercise its discretion to revisit an issue that "must have been decided explicitly or by necessary
9  implication in the previous disposition." *Lower Elwha Band of S'Kallams v. Lummi Indian Tribe*, 235 F.3d
10 443, 452 (9th Cir. 2000). Accordingly, the Court holds that the law of the case doctrine bars defendants'
11 instant motion for judgment on the pleadings with respect to plaintiffs' Section 36(b) claims.

### B. Franklin Resources and Franklin Templeton Services as defendants

Defendants also argue that Franklin Resources and Franklin Templeton Services should be dismissed with prejudice because plaintiffs have failed to allege that either is "the recipient of such compensation or payments," as Section 36(b) requires. Plaintiffs' opposition essentially concedes that the Third Amended Complaint does not contain any such allegation against Franklin Templeton Services, and indeed states that "in the Third Amended Complaint, plaintiffs intended to include defendant Franklin Templeton Services as a defendant in the state class action allegations only." Plaintiffs' Opposition at 15 n. 8. Accordingly, defendants' motion for judgment on the pleadings on Counts I, II and III with respect to defendant Franklin Templeton Services is GRANTED.

With respect to defendant Franklin Resources, plaintiffs contend that they have sufficiently amended the complaint to include allegations that Franklin Resources is a recipient of compensation or payments under Section 36(b). The Third Amended Complaint alleges, *inter alia*, that "Franklin Resources receives compensation from each of the funds identified herein and earns investment management fee revenues by

---

[3] *See* Plaintiffs' Opposition Exh. 2 at 16 (transcript of July 12, 2005 hearing in *Berdat v. Invesco Funds Group, Inc.*, H-04-CV-2555).

6

providing, inter alia, investment advisory services pursuant to investment management agreements with each fund." Compl. at ¶ 5. The Court holds the Third Amended Complaint adequately alleges that Franklin Resources receives compensation within the meaning of Section 36(b).

### 2. State law claims (Counts IV - IX)

Defendants contend that plaintiffs' state law claims, Counts IV through IX, are preempted under SLUSA and thus should be dismissed. SLUSA provides, in pertinent part,

> (b) Class action limitations
>
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
>
>> (1) an untrue statement or omission of material fact in connection with the purchase or sale of a covered security; or
>>
>> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b); *see also* 15 U.S.C. § 78bb(f)(1).

Plaintiffs do not dispute that this is a "covered class action" involving a "covered security." Instead, the parties' debate centers on whether plaintiffs' state law claims are (1) based on allegations of a fraudulent scheme or an untrue statement or omission of material fact on the part of defendants, (2) "in connection with the purchase or sale" of a covered security. Plaintiffs contend that the gravamen of their state law claims is not a claim for fraud, but instead a claim that defendants were under a duty to charge only reasonable fees for the services they provided; that they breached this duty by charging unreasonable and excessive fees; and that by reason of these overcharges, plaintiffs and other investors were damaged.

#### A. Fraud or misrepresentation

Defendants cite paragraphs 54, 55, 73, 93, 98, 111, 119, 121 and 122 of the Third Amended Complaint for their contention that plaintiffs have alleged that defendants have omitted or misrepresented material facts in connection with the purchase or sale of covered securities. A review of these paragraphs demonstrates that plaintiffs have alleged that defendants have omitted or misrepresented facts. *See e.g.,* ¶ 73 ("[T]he soft dollar arrangements are concealed from the shareholders of the Funds in breach of Defendants'

fiduciary duty); ¶ 121 ("Documents circulated by Class Defendants are unfair and misleading in that they represent implicitly or expressly that the fees charged by or on behalf of Class Defendants are fair and proper when they are exorbitant and excessive. In effect, Class Defendants have masked the true extent of the fees they charge, thereby lulling investors into a false sense of security that they are trustworthy fiduciaries . . . .").

Plaintiffs contend that although there are various allegations in the complaint that mention certain misrepresentations and omissions made by defendants, these allegations do not go to the heart of their complaint. Plaintiffs' Opposition at 17. However, this argument ignores the plain language of SLUSA, which preempts claims alleging "an untrue statement or omission of material fact" in connection with the purchase or sale of a covered security. 15 U.S.C. § 77p(b). Plaintiffs contend that their claims are not dependent in any way on proving fraud or misrepresentation, and in the event the Court concludes that plaintiffs have alleged "an untrue statement or omission of material fact" under SLUSA, plaintiffs seek leave to amend their state law claims.

### B. "In connection with the purchase or sale of securities"

However, even if plaintiffs have alleged misrepresentations or omissions on the part of defendants, such acts must be "in connection with the purchase or sale of securities" in order for plaintiffs' state law claims to be preempted. *Id.* Courts interpreting SLUSA's "in connection" requirement have looked to the case law interpreting nearly identical language as used in Section 10(b) and Rule 10b-5 of the Securities and Exchange Act of 1934.[4] *See Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002), *as amended*, 320 F.3d 905 (9th Cir. 2003).

The Supreme Court recently interpreted this language in *SEC v. Zandford*, 535 U.S. 813 (2002), an action under Section 10(b) and Rule 10b-5. The Court held that the requisite connection is established where a "fraudulent scheme" and a securities transaction "coincide." *Id.* at 825. The Court noted that although this language should be interpreted "flexibly to effectuate its remedial purposes," it "does not transform every breach

---

[4] *See* 15 U.S.C. § 78j(b) (prohibiting fraud "in connection with the purchase or sale of any security"); 17 C.F.R. § 240.10b-5 (prohibiting, *inter alia*, material misrepresentations and omissions "in connection with the purchase or sale of any security").

8

of fiduciary duty into a federal securities violation." *Id.* at 819, 825 n.4. Following *Zandford*, the Ninth Circuit analyzed the "in connection with" requirement and held:

> The fraud in question must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves. While the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction.

*Falkowski*, 309 F.3d 1130-31 (quoting *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999)).

Defendants contend that plaintiffs' claims are preempted under *Falkowski* because "[b]y allegedly not disclosing all the facts about the alleged conflict of interest and the lack of a basis for the costly Distribution Plans, defendants allegedly failed to disclose a risk to investors that the returns on their investments in the Funds would be reduced by the excessive fees that defendants would continue to charge." Defendants' Reply at 8. However, defendants' argument misses the point because in order to be preempted by SLUSA, plaintiffs' claims must be "in connection with the purchase or sale" of securities; plaintiffs' allegations that defendants charge excessive fees in relation to the advisory services performed does not turn on the purchase or sale of a security.

Further, most of the cases cited by defendants are distinguishable because the claims at issue more directly involved sales or purchases of securities. *See, e.g., Prof'l Mgmt. Assocs. Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (preempting claims alleging plaintiffs relied on defendant's false financial reports when buying and retaining stock); *In re Enron Corp. Securities Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 636 (S.D. Tex. 2003) (preempting claims that plaintiffs were fraudulently induced into purchasing and retaining employee stock options); *Feitelberg v. Merrill Lynch & Co.*, 234 F. Supp. 2d 1043, 1052 (N.D. Cal. 2002) (preempting claims that plaintiffs purchased stock in reliance on defendant's unfair and/or deceptive company ratings); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 999 (C.D. Cal. 2002) (preempting claims alleging defendant failed to pay interest on monies temporarily deposited in mutual fund prior to purchase of CD); *Prager v. Knight/Trimark Corp.*, 124 F. Supp. 2d 229, 234 (D.N.J. 2000) (preempting claims alleging defendant improperly used information about retail customers' trades for its own profit before executing customers' trades).

The only cases cited by defendants that are somewhat similar to the instant one are the Third Circuit's decision in *Rowinski v. Salomon Smith Barney*, 398 F.3d 294 (3rd Cir. 2005), and a New Jersey district court case *In re Lord Abbett Mutual Funds Fee Litigation*, 385 F. Supp. 2d 471 (D.N.J. 2005). In *Rowinski*, an investor brought a state-court class action against an investment brokerage firm alleging that the firm had disseminated biased analyses of certain securities in order to favor the firm's investment banking clients. The plaintiff alleged that Salomon Smith Barney breached the parties' services contract, unjustly enriched Solomon Smith Barney, and violated state consumer protection law. After Salomon Smith Barney removed the case to federal court, the district court dismissed the plaintiff's claims based on SLUSA preemption, and the Third Circuit affirmed, holding that the complaint alleged a fraudulent scheme coinciding with the purchase or sale of securities:

> Salomon Smith Barney systematically misrepresented the value of securities to the investing public in order to curry favor with investment banking clients and reap hundreds of millions of dollars in investment banking fees. For this purported scheme to work, investors must purchase the misrepresented securities. Absent purchases by duped investors and a corresponding inflation in the share price, Salomon Smith Barney's biased analysis would fail to benefit its banking clients and, in turn, would fail to yield hundreds of millions of dollars in investment banking fees. The scheme, in other words, necessarily 'coincides' with the purchase or sale of securities.

*Id.* at 302 (citing *Zandford*, 535 U.S. at 825).

In the *Lord Abbett* case, plaintiffs were shareholders in mutual funds who brought a class and derivative action challenging broker compensation practices employed by Lord Abbett pursuant to which brokers were allegedly compensated excessively as an incentive for them to steer new investors into Lord Abbett mutual funds. 385 F. Supp. 2d at 474. Relying on *Rowinski*, the court in *Lord Abbett* held that the plaintiffs' claims were preempted by SLUSA:

> The gravamen of Plaintiffs' Complaint in this case is that Lord Abbett made improper, undisclosed, and excessive payments to brokers to induce them to aggressively market the Funds, which practices caused Fund shareholders to suffer a decline in net asset value per share despite also causing overall Fund growth (which growth, coincidentally, boosted Lord Abbett's management fees). For this scheme to work and cause harm to Plaintiffs, however, new investors must purchase shares of the Fund. This scheme, therefore, like the scheme in *Rowinski*, necessarily "coincides" with the purchase or sale of securities.

*Id.* at 484.

Here, plaintiffs allege that defendants charge excessive fees in relation to the advisory services they provide to the Funds, and they do not allege that they were induced into purchasing or selling any securities,

or that defendants' actions led them to hold on to their securities longer than they would have otherwise. The only transactions that are described or referred to in the complaint are the following:

- "Another example is where Defendants use fund assets, in violation of Rule 12b-1, to participate in pay-to-play schemes such as 'directed brokerage,' where the Defendants cause the Funds to make payments over and above the payments permitted under the Funds' 12b-1 plan limits. Defendants direct the Funds' brokerage business to brokerage firms and pay them above market rates to promote Defendants' mutual funds over other funds sold by the brokerage firms. On information and belief, payments are also improperly channeled to employee benefit fund fiduciaries and/or advisors to compensate them for selecting Franklin Templeton funds on their retirement plan menus. These payments are illegal and improper under federal law and the common law." ¶ 56.

- "Other, easier to quantify, benefits include 'soft dollars' payable from broker-dealers. Essentially, 'soft dollars' are credits furnished to Defendants from broker-dealers and other securities-industry firms in exchange for routing the Funds' securities transaction orders and other business to paying firms. These soft dollar credits should be used to purchase research and other goods or services that benefit the shareholders of the Funds. On information and belief, however, the soft-dollar arrangements benefit Defendants and result in increased costs to the shareholders of the Funds with little to no corresponding benefits to the shareholders of the Funds. On information and belief, the soft dollar arrangements are concealed from the shareholders of the Funds in breach of Defendants' fiduciary duty." ¶ 73.

- "The distribution fees charged and received by Defendants or their affiliates were designed to, and did, extract additional compensation for Defendants' advisory services in violation of Defendants' fiduciary duty under § 36(b). When Defendants first initiated the Distribution Plans, they represented that the distribution fees were being collected in order to, at least in part, grow the assets of the Funds in order to reduce the cost to Plaintiffs and the shareholders of the Funds of providing advisory services. Although the distribution fees may have contributed to the growth in assets of the Funds, the resulting economies of scale benefits only Defendants, and not Plaintiffs or the Funds." ¶ 93.[5]

The transactions at issue in the instant case are between defendants and third parties, and do not involve any purchase or sale of securities by plaintiffs (or class members) themselves. The gravamen of plaintiffs' complaint does not concern the purchase or sale of securities by the third parties; the "scheme" challenged by plaintiffs does not turn on the purchase or sale of securities, although the purchase or sale of securities may be tangentially related. Instead, plaintiffs allege that defendants have engaged in transactions that should have reduced defendants' costs in providing advisory services to the Funds, but that defendants did not pass these savings along to plaintiffs and the Funds and instead defendants kept the savings as additional compensation for themselves. Here, to the extent plaintiffs allege defendants misrepresented or omitted facts, such allegations do not have more a "tangential relation to the securities transaction." *Falkowski*, 309 F.3d 1130-31.

---

[5] This paragraph, which is contained in Count III (ICA § 36(b) – Breach of Fiduciary Duty), is incorporated by reference in the state law causes of action.

11

Accordingly, the Court concludes that plaintiffs' state law claims are not preempted by SLUSA, and hereby DENIES defendants' motion to dismiss these claims.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby PARTIALLY GRANTS and PARTIALLY DENIES defendant's motion. [Docket No. 127].

**IT IS SO ORDERED.**

Dated: November 8, 2005

SUSAN ILLSTON
United States District Judge